[S. F. No. 13689. In Bank.—April 1, 1931.]

WILLIAM F. HERRON, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Leo R. Friedman for Petitioner.

Jesse H. Steinhart, John J. Goldberg, Charles A. Beardsley, William H. Donahue, Francis V. Kessling, Max C. Sloss and Joe G. Sweet for The State Bar of California.

Carey Van Fleet, J. J. Dunne, William J. Hunsaker, Warren Olney, Jr., and Sullivan, Roche, Johnson & Barry, *Amici Curiae.*

PRESTON, J.—We have reconsidered our former decision in this cause and given further study to the procedure employed in bringing the accused before the court.

On August 6, 1929, the board of governors of The State Bar filed herein their recommendation that petitioner be disbarred from the practice of the law in this state. This was preceded by findings sustaining four separate charges or counts against him, followed by the filing in this court in due time of the record of the proceedings. Within the time allowed by law petitioner sought a review of said findings and recommendation and the matter has been argued and re-argued at length and we have been favored by several briefs of the parties themselves, aided by *amici curiae.*

The proceeding was brought to issue by informal complaints made to the board of governors and the local

administrative committee of The State Bar. Investigation of the charges was thereafter made, resulting in a notice or order to show cause, specifying the said charges and fixing the date and hour for a hearing thereon. Petitioner does not complain of lack of notice nor does he complain of any deprivation of the right to know the character of the accusations nor of lack of time to prepare his defense through counsel or to·produce evidence nor of lack of opportunity to examine and cross-examine witnesses.

His sole complaint in this behalf is that the accusations were 'not in writing and verified as provided in sections 289, 290 and 291 of the Code of Civil Procedure. In other words, he contends that said code sections must be considered an integral and substantive part of the State Bar Act, which, unless and until followed, forbid the inauguration of disciplinary proceedings; that is, he asserts a jurisdictional prerequisite to any such proceeding is the filing of a complaint in writing verified by some person of his own knowledge and not upon information and belief, unless the accusation is made by an organized bar association.

These code sections read as follows: "Sec. 289. The proceedings to remove or suspend an attorney and counselor, under the first subdivision of section two hundred eighty-seven, must be taken by the court on the receipt of a certified copy of the record of conviction. The proceedings under any of the other subdivisions of that section may be taken by the court for the matters within its knowledge, or may be taken upon the information of another."

Section 290: "If the proceedings are upon the information of another, the accusation must be in writing."

Section 291: "The accusation must state the matters charged, and be verified by the oath of some person, to the effect that the charges therein contained are true, which verification may be made upon information and belief when the accusation is presented by an organized bar association."

In the light of the above sections of the code and the above facts, we are to examine the provisions of the State Bar Act upon this subject (Stats. 1927, chap. 34, p. 38). This act seems clearly to provide a complete alternative and cumulative method of hearing and determining accusations against members of The State Bar. This is

true first, because of the nature and purpose of the legislation itself. The act sets up an institution controlled and managed by the members of the profession who are public officers acting under oath without compensation and functioning as an arm or branch of this court in the matter of admissions, reinstatements and discipline of attorneys at law. The laudable general purpose of the act is expressed therein as being "to aid in the advance of the science of jurisprudence and in the improvement of the administration of justice (sec. 23)".

The overlying organization is composed of a large body selected from the membership known as the board of governors aided by groups known as administrative committees. The field of discipline covers not only infractions of the law of the state by attorneys (sec. 26), but may extend to infractions by them of the rules of professional conduct formulated by the board and approved by this court (sec. 29) and delinquencies such as failure to pay dues and penalties, etc. (sec. 46). ■ The act also sets up a bureau of investigation and provides in disciplinary matters for a preinvestigation of the accusations; if, upon such investigation, the conclusion is reached that a hearing is required, such hearing is then ordered and notice thereof issued. Said preinvestigation may follow the receipt of a complaint, either verified or unverified, or even verbal, or it may be initiated through the board of governors themselves.

The law does not define the characteristics or contents of any such complaint. The use of the word "complaint" is made without qualification. It is not even required to be in writing. In this connection section 34 of the act provides: " . . . The board, or any local administrative committee, . . . shall, of its own motion and without the filing or presentation of any complaint, or upon any complaint, if a complaint be filed, have power to initiate and conduct investigations of all matters affecting or relating to the . . . discipline of the members of The State Bar . . . and in the conduct of such investigations shall have power to take and hear evidence touching the matters under investigation, administer oaths and affirmations, and upon such investigations, and upon the trial or hearing . . . shall have power to compel the attendance of witnesses and the production

of books, papers and documents pertaining to the matter under investigation, or to said trial or hearing. . . . '' A local administrative committee also has power ''to receive and investigate complaints as to the conduct of members, make findings and recommendations and forward its report to the board of governors for action, which may either act upon the report or may take additional evidence, or set aside the report and hear the whole case *de novo,* as it may elect (sec. 32)''. The board of governors, too, subject to the provisions of the act, may by rule, provide the mode of procedure in all cases of complaints against the members (sec. 37).

In short, the act clearly contemplates an investigation and a finding or conclusion as to whether or not it is advisable to institute proceedings against a member and cause a hearing to be held. It is to be noted that in these ''investigations'' the officers are clothed with the power to compel the attendance of witnesses and production of books, papers and documents pertaining to the matter under inquiry. All this investigation takes place before a proceeding is formally instituted or a ''hearing'' had. This procedure completely and adequately occupied the same field held by the verified accusations under the system provided for in the code sections. It is an effort to take an advanced step over and to improve upon the system provided for in the code. In fact, the preliminary investigation is an inquiry by officers of this court selected for the purpose of ascertaining the probable truth of the charge made. Such an investigation doubtless does and it should allow an opportunity for the accused to be heard before a proceeding is begun. With competent officers, acting conscientiously and impartially, who can say that this system is inferior to or less just than that provided in the code? What innocent man would not prefer this method of handling a complaint to a public proceeding against him resting alone upon the affidavit of a partisan, if not a prejudiced client? There is nothing in this proceeding which in any way weakens our firm belief that the board of governors and committees functioning under it are all competent, patriotic and unselfish members of the profession, acting for its best interests, it is true, but also in full sympathy with all rights and privileges of the members as attorneys at law.

When a hearing is decided upon, it is not even contended that the act does not provide ample machinery for the safeguarding of every right of the accused. The notice must be reasonable and, of course, must contain a specification of the charge, together with the right of the accused to defend himself against it through counsel, aided by the right of subpoena and the right to introduce evidence and to examine and cross-examine witnesses (sec. 35). A record or transcript of the hearing must be made and preserved by the board or committee (sec. 36) and if disbarment or disciplinary action is to be recommended, such decision, findings and transcript are to be lodged with the clerk of this court (sec. 26) and the decision thus made may be followed by a review in this court in the manner provided (sec. 38).

Other provisions of the act might be cited as further evidence of the fact that the organization is intended to function independently without interference or aid by any other provisions of our law respecting the same subject. Indeed, were it not specially provided against, a strong argument could be made for the conclusion that a repeal of said code sections by implication had occurred. In fact, such contention was made in the Supreme Court of the state of Alabama, as recorded in the case of McCord v. State, 220 Ala. 466 [126 South. 873], wherein it may be noted that Alabama has a state bar act as well as certain code provisions relating to the discipline of offending members of the bar. It was contended there that the code provisions had been repealed by the special act but the statute of that state provided in so many words that it was a cumulative remedy and for that reason the court declined to hold the code sections repealed.

We find the following language in section 26 of the act before us: ''Nothing in this act contained shall be construed as limiting or altering the powers of the courts of this state to disbar or discipline members of the bar as this power at present exists.'' We can make little else out of this provision than a declaration that each of the two methods of procedure is to be independent of the other. If verified complaints were to be jurisdictional prerequisites under the State Bar Act, here would have been the place to

expect such a provision. Instead of so providing, we find a special legislative declaration that the code sections are to be construed independently of the act. If this be true, it seems clearly to follow conversely that the State Bar Act is to be construed independently of the code provisions.

 Of course, we need not pause to discuss at length the principle which has obtained in this country for more than one hundred years that the absence of a verified complaint does not deny the accused the constitutional right of due process of law so long as notice is given and a hearing accorded him. (*Ex parte Burr,* 9 Wheat. 529 [6 L. Ed. 152]; *Randall* v. *Brigham,* 7 Wall. 523, 539 [19 L. Ed. 285]; *Ex parte Wall,* 107 U. S. 265, 271, 288 [27 L. Ed. 552, 2 Sup. Ct. Rep. 569, 588]; *In re Shepard,* 109 Mich. 631 [67 N. W. 971].) As to the general purpose of matters of discipline, a quotation from the Wall case, *supra,* is pertinent: "The proceeding is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them. Undoubtedly, the power is one that ought always to be exercised with great caution; and ought never to be exercised except in clear cases of misconduct, which affect the standing and character of the party as an attorney. But when such a case is shown to exist, the courts ought not to hesitate, from sympathy for the individual, to protect themselves from scandal and contempt, and the public from prejudice, by removing grossly improper persons from participation in the administration of the laws. The power to do this is a rightful one; and, when exercised in proper cases, is no violation of any constitutional provision."

We may, therefore, conclude that there is no absence of jurisdiction shown by the record, but, on the contrary, that the procedure set up by the State Bar Act is self-sufficient and was duly followed as to petitioner. All other legal questions urged have heretofore been passed upon by this court and time need not be consumed in the discussion of them.

 This brings us to a consideration of the merits of the several charges leveled at petitioner. In the so-called "Maxwell Matter" it is found, upon competent evidence,

that an action to recover $161 had been brought against a client of the accused; that opposing counsel thereafter entered into an agreement to compromise and settle the suit for $111; that on March 29, 1927, the accused was given a check to his order in the sum of $55 for the express purpose of being applied toward the payment of said settlement; that on May 10, 1927, the client delivered to him an additional $56 in cash to be applied to the balance of the principal amount of the settlement; and, that the accused has paid over to opposing counsel only $75 of the $111 so delivered to him, having wrongfully appropriated to his own use the remaining $36. In an attempted explanation of his conduct, the accused denied receiving a portion of the money asserted to have been delivered to him and testified that the remainder was intended as and had been accepted for his fee in the prosecution of a justice's court appeal in another cause. The accused concedes that the evidence is in sharp conflict and he is therefore forced to rely upon the "presumption of innocence" and the asserted ill will of the witnesses and the examining committee toward him.

The findings in the "Jones Matter", which are also based on substantial evidence, show that the accused was employed to and did institute an action on a promissory note in the sum of $300; that without the knowledge of his client, he settled and compromised the action for $200, which sum was paid to and converted by him to his own use. The accused, though personally served with notice of the proposed hearing on this charge, refused by letter to appear before the local administrative committee to defend it, asserting that the committee was biased and proceeding illegally under an unverified complaint. The legality of the procedure adopted has already been considered and disposed of adversely to the accused. Upon the conclusion of the hearing on this charge and subsequent to the making of the foregoing findings by the local committee, the accused filed with the board of governors an affidavit stating he had compromised and settled the suit with his client's consent upon discovering that there had been a partial failure of consideration for the note sued on and that his failure to turn over the money to his client was attributable to his inability to locate her. He also avers that he did not learn

of the client's true address until served with a warrant issued upon her complaint, whereupon he promptly paid over the money to her. In opposition to this claim of petitioner, there is the testimony of the complainant that she had communicated with the accused upon learning from other sources of the settlement of the action and that the accused had denied any such settlement. The examiner appointed by The State Bar to investigate the charge testified that the accused had informed him that he had paid over the money to the complainant and held her receipt therefor. It is significant to note that this money was received by the accused in July, 1928, and paid over to the client in June, 1929, almost a year later, and then only after a warrant had been issued for the arrest of the accused.

We now come to the "Larricq Matter", wherein it is found, upon sufficient evidence, that in March, 1928, Pierre L. Larricq and wife had interviewed the accused as to the advisability of purchasing stock in a certain garbage company; that upon investigation the accused advised against such investment, suggesting, instead, the investment of $500 in the stock of another and different company which, so the accused asserted, he and certain other persons were to incorporate under the laws of Nevada; that the complainants thereupon delivered to the accused a check payable to his order in the sum of $500; that the proposed corporation has never been formed and neither the stock nor the money ever delivered to the complainants, though repeatedly demanded by them. As in the Jones matter, for the same reasons, the accused refused to appear before the local committee and answer to the charge. In his petition he attempts to justify his retention of the $500 on the ground that he was entitled to a portion, if not all, of the money as and for his fee. Opposed to this claim there is evidence tending to show that prior to undertaking any investigation for the Larricqs, the accused had demanded and received, in three equal installments, the sum of $150 in payment of his fee.

The fourth and final charge of misconduct of which petitioner was found to be guilty arose out of his unreasonable retention of $500 delivered to him on February 20, 1928, for and on behalf of a client, which sum of money was to be

paid over by the accused in discharge of certain alimony payments owing by said client, providing such arrangement was satisfactory to the adversary litigant. A check for this sum was made out to the order of the accused. Indorsements on the check show that it was cashed by the wife of the accused within a few days after its issuance. Demand for the return of this money was made on June 6, 1928. Approximately three weeks thereafter and while the money was still held by the accused, certain executions issued in other actions were levied upon it. From this the committee concluded that the accused had wrongfully retained the money for twenty-two days, representing the period between the demand for its return and the levy of the executions thereon, and that he was derelict in his duty to his client in not instituting an interpleader action or otherwise attempting to compose the conflicting claims to the money held by him. Petitioner's explanation of this particular charge is to the effect that he was at all times negotiating with opposing counsel. He further testified that he had advanced $150 out of his own pocket to prevent his client being adjudged in contempt pending the settlement negotiations. This evidence being intended to show that he had a claim upon a portion of the money.

Upon each of the first three charges the local committee recommended that petitioner be disbarred from the practice of the law and as to the last charge that he be suspended therefrom for a period of three months. The board of governors thereafter adopted the findings of the local administrative committee, the substance of which are set out above, and has recommended to this court that petitioner be disbarred.

Although our examination of the record shows little justification for petitioner's actions, nevertheless we do not feel that his permanent disbarment is warranted. Accordingly, it is ordered that the petitioner be and he is hereby suspended from the practice of the law in this state for the period of one year from and after the filing of this order.

Seawell, J., Waste, C. J., and Shenk, J., concurred.

CURTIS, J., RICHARDS, J., and LANGDON, J., Dissenting.—We dissent. We believe that the unanimous

opinion of this court heretofore filed on August 22, 1930, is correct, and we adhere to it and adopt it as our dissenting opinion in this case. The said opinion reads as follows:

"On August 6, 1929, the Board of Governors of The State Bar of California filed herein its recommendation that petitioner William F. Herron be disbarred from the practice of law in this state. This recommendation was predicated upon certain findings of fact of local administrative committee No. 4, in and for the city and county of San Francisco. This committee found petitioner guilty of unprofessional conduct upon four separate and distinct accusations. Within the time provided by law petitioner duly filed in this court his petition for a review of the action of the Board of Governors of The State Bar recommending his disbarment in accordance with the provisions of section 26 of the State Bar Act. The Board of Governors has appeared herein and filed its answer to said petition and upon said petition and answer and the evidence and proceedings had before the Board of Governors and said administrative committee a transcript of which has been filed with the clerk of this court, said matter has been submitted for decision.

"Of the four accusations made against petitioner before the Board of Governors only one was in writing. This one was verified, not by the person aggrieved by the alleged misconduct of the petitioner, but by his attorney upon information and belief.

"Petitioner makes the contention that the filing of a complaint under oath is a necessary condition precedent to any proceeding which terminates in the discipline of an attorney by disbarment or suspension.

"Prior to the enactment of the State Bar Act, proceedings for the disbarment of attorneys were governed entirely by certain provisions of the Code of Civil Procedure. (Secs. 287 to 301.) The provisions of the code which provided for the procedure to be followed in the disbarment or suspension of an attorney are to be found in sections 289, 290 and 291, which read as follows:

"'Proceedings for removal or suspension. The proceedings to remove or suspend an attorney and counselor, under the first subdivision of section two hundred eighty-seven must be taken by the court on the receipt of a certified

copy of the record of conviction. The proceedings under any of the other subdivisions of that section may be taken by the court for the matters within its knowledge, or may be taken upon the information of another.' (Sec. 289, Code Civ. Proc.)

" 'Accusations. If the proceedings are upon the information of another, the accusation must be in writing.' (Sec. 290, Code Civ. Proc.)

" 'Verification of accusation. The accusation must state the matters charged, and be verified by the oath of some person, to the effect that the charges therein contained are true, which verification may be made upon information and belief when the accusation is presented by an organized bar association.' (Sec. 291, Code Civ. Proc.)

"There is nothing in the State Bar Act which by direct enactment repeals or attempts to repeal any of these code sections. On the contrary, section 26 of the State Bar Act provides that, 'Nothing in this act contained shall be construed as limiting or altering the powers of the courts of this state to disbar or discipline members of the bar as this power at present exists.' In the exercise of its power to suspend or disbar attorneys, the court is governed by the provisions of the above-quoted sections of the Code of Civil Procedure, and any proceedings, therefore, before the courts instituted for the purpose of disbarring or suspending from practice an attorney at law must be initiated by an accusation sworn to by a person who has actual knowledge of the facts alleged therein, except that when the acccusation is presented by an organized bar association, the verification may be upon information and belief.

"The next question presented by the record before us is whether accusations originating before the Board of Governors of The State Bar and then certified to this court are subject to any different regulations than those imposed upon accusations made direct to this court.

"At this time it is well to call attention to the fact that the final order of disbarment or suspension of an attorney must in all cases be made by this court and that the Board of Governors of The State Bar has not been invested with power to make such final order. Proceedings, therefore, for the disbarment or suspension of an attorney, even when

they are instituted in the first instance before the Board of Governors, are in fact proceedings before this court as no effective or final order can be made therein except by the court after such proceedings have been certified thereto by the Board of Governors of The State Bar. (Sec. 26, State Bar Act; *In re Shattuck*, 208 Cal. 6 [279 Pac. 998].)

"The protection of the public from the 'evil practices' of dishonest and dishonorable attorneys is of paramount importance to the bar of this state, as well as to the public generally. Nevertheless, sight should not be lost of the fact that the right to practice law is a valuable property right and that no attorney should be deprived of this right without a fair hearing and ample opportunity to disprove any accusations made against him. The legislature in the enactment of the above-quoted code sections was meticulous in safeguarding the right of an attorney by requiring that he be faced with a sworn accusation of the charges against him. If an attorney is guilty of misconduct so gross as to warrant disbarment or suspension, the party aggrieved should be willing to make an oath or affirmation of the truth of the charges preferred. If he is not guilty, it is only fair that he should have some recourse against anyone making an unfounded and unwarranted charge. In the absence of language clearly expressing that intention, we are loath to hold that the legislature by the enactment of the State Bar Act intended to eliminate the requirement that before an attorney may be disbarred or suspended a complaint verified by oath or affirmation must be filed against him.

"The only provision of the State Bar Act which in any manner touches this matter is found in section 34 thereof, which in part reads as follows:

" 'The board, or any local administrative committee shall, of its own motion and without the filing or presentation of any complaint, or upon any complaint, if a complaint be filed, have power to initiate and conduct investigations of all matters affecting or relating to The State Bar, or its affairs, or the practice of the law, or the discipline of the members of The State Bar, or any other matter within the jurisdiction of The State Bar, and in the conduct of such investigations shall have power to take and hear

evidence touching the matters under investigation, administer oaths and affirmations, and upon such investigations, and upon the trial or hearing of all matters, jurisdiction to try or hear which is given the said board or committee, shall have power to compel the attendance of witnesses and the production of books, papers and documents pertaining to the matter under investigation or to said trial or hearing, by subpoena issued as hereinafter provided. . . . '

"From this section of the State Bar Act it is seen that the Board of Governors or any local administrative committee shall of its own motion and without the filing or presentation of any complaint have power to initiate and conduct investigations of all matters affecting or relating to the discipline of the members of The State Bar. Just what is meant by the term 'power to initiate and conduct investigation' of matters affecting the discipline of the members of The State Bar? We do not believe that the power to initiate and conduct investigations conferred by this section of the State Bar Act was intended to be coincident with the power to hear and try accusations against an attorney and upon such hearing and trial to make recommendations to this court looking toward an attorney's disbarment or suspension. Within the very section itself a distinction is made between such investigations and a trial or hearing, for the section provides that 'upon such investigation, *and* upon the trial or hearing of all matters, jurisdiction to try or hear which is given to the said board or committee', the board or local administrative committee shall have power to compel the attendance of witnesses, etc. Moreover, this power to make recommendations after hearings had already been conferred upon the Board of Governors by section 26 of the State Bar Act. It is also to be noted that it is with reference to the conduct of investigations, which may or may not pertain to the disbarment or suspension of a member, that The State Bar is authorized to proceed with a complaint or accusation under oath. We are, therefore, convinced that the legislature intended by the use of the term 'investigation' to mean nothing more than a systematic inquiry into the matters therein designated, and to confer upon the Board of Governors or the local administrative committee the means by compelling the at-

tendance of witnesses, etc., to make such investigations effective.

"As there are no other provisions in the State Bar Act relative to any complaint or accusation upon which a trial or hearing and a recommendation of disbarment or suspension may be made, we are of the opinion that as to such complaints and accusations the code sections hereinbefore quoted still control.

"Respondent relies upon the case of *Ex parte Wall*, 107 U. S. 265 [27 L. Ed. 552, 2 Sup. Ct. Rep. 569], in support of its action in proceeding against petitioner without any formal or verified accusations. The proceeding before the United States court for the disbarment of Wall was not initiated by any formal complaint against Wall. The court acted upon its own motion, much like the Board of Governors proceeded against petitioner herein in the proceeding now under review, and its action, which resulted in a judgment of disbarment of Wall, was sustained by the Supreme Court of the United States. But in the federal procedure for the disbarment of an attorney there was no statute which required, as do the statutes of this state, the filing of a verified accusation against the offending attorney. For this reason we do not think that the case of *Ex parte Wall* is applicable to disbarment proceedings instituted in this state.

"In holding that the power to initiate and conduct investigations conferred by section 34 of the State Bar Act does not measure up to the power to try and hear charges leading up to disbarment or suspension conferred by section 26, we do not wish to be understood as holding that the section contemplates nothing more than mere sleuthing expeditions. For if during the preliminary inquiry into matters affecting the discipline of members of the bar matters should be brought to light warranting a recommendation to this court that an attorney should be disbarred or suspended, a sworn complaint may then be filed with the local administrative committee or with the Board of Governors, and the said committee or board may proceed to hear and try the charge and make its findings and recommendation.

"Inasmuch as none of the charges against the petitioner is supported by the oath and affirmation of any party, other

than the one which was verified upon information and belief, this court is without power in the absence of such sworn accusation to make an order of disbarment against the petitioner.

"In view of the opinion already expressed herein, it is not necessary to decide the numerous other questions presented by the petitioner, nor to pass upon the merits of the charges preferred against him."

We reiterate the view that the requirement of a verified complaint in this proceeding is jurisdictional; and we refrain from considering the merits of the charges against the accused because they are not properly before us.

We believe that whatever was the view of those who framed the State Bar Act in providing for the final disposition of disciplinary matters by the board of governors, that interpretation no longer obtains, since by judicial construction that power rests solely with this court. Under section 289 et seq. of the Code of Civil Procedure, this court has no jurisdiction to proceed except upon a verified complaint, as in any other criminal or *quasi*-criminal proceedings; and it therefore follows that such an alternative system to that provided by the code, as contended in the majority opinion herein, does not exist, since to give it existence and application would nullify in effect the code provision.

It may be conceded that the State Bar Act is a novel experiment in legislation in the United States; but it is equally true that it is not easily adjusted and fitted into the California system of laws. Only through modification by sympathetic interpretation of the Supreme Court has it been able to function at all. Through this process the original act has been emasculated to such an extent that it now bears slight semblance to the law as conceived by its framers. Certain powers claimed by its governing board under the act are no longer recognized; and what was conceived to be an act vesting full power and control over the admission and discipline of members of the bar has been practically nullified, in those respects at least, by decisions of this court. The disposition of disciplinary matters is now determined by the Supreme Court. It would seem to follow that the essential requirements of the court for jurisdiction should be met; and one of these is a verified complaint. Upon an unverified complaint, no

person accused of a punishable offense can be brought into the courts; and we think that this is necessarily so in the interests of justice and fair dealing.

The lawyer is a member of an ancient and honorable profession. His reputation is his chief working capital. Like a woman's virtue, to question it is to do irreparable harm. One who is not willing to make his accusation under oath should not be permitted to destroy that reputation. It is no answer to say that if the accused is innocent he will be vindicated. The mere fact that he is brought before the bar is itself ruinous to his reputation in the community in which he resides. The procedure which The State Bar seeks to justify, and which the majority opinion sanctions, leaves the attorney without any effective protection against the loose and groundless charges so frequently made by disgruntled clients. If an attorney may be proceeded against upon the unverified complaint of any individual, then it is immaterial that later he may have a fair trial and an opportunity to establish his innocence. His reputation is vitally affected by the mere fact that he is being tried. Before an attorney is stigmatized for alleged wrongdoing, the accusation against him should be made by one who knows the truth of the charge and verifies it under oath. We deem this requirement based on elemental justice and anything less cannot be justified on the ground of expediency or any of the other reasons suggested. The Code of Civil Procedure makes the requirement, and without it, jurisdiction does not attach.

Rehearing denied.

Richards, J., Curtis, J., and Langdon, J., dissented.