[S. F. Nos. 16833, 16881, 16959. In Bank. Apr. 3, 1944.]

WILLIAM F. HERRON, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

(Three proceedings.)

William F. Herron, in pro. per., and William E. Ferriter for Petitioner.

P. H. McCarthy and Jerold E. Weil for Respondent.

THE COURT.—Now pending review by this court are three disciplinary proceedings instituted against the petitioner during the years 1940 to 1943 upon charges of professional misconduct arising out of the commission of acts involving moral turpitude (Bus. & Prof. Code, chap. 4, art. 6, § 6106) and of the violation of his oath and duties as an attorney at law (Bus. & Prof. Code, chap. 4, art. 6, § 6103; art. 4, §§ 6067, 6068). Commensurate with the import of the successive recommendations of the Board of Governors of The State Bar of California in these three matters, it is appropriate that they be considered in one opinion preliminary to a determination of the full measure of discipline to be imposed.

The first proceeding concerned the petitioner's alleged failure to take adequate steps to protect the interests of one of his clients in a quiet title action which he had commenced on her behalf, with the result that a default judgment was entered against her. After a rather extended hearing, the sessions of which were held intermittently during the course of some eleven months, the local administrative committee found the petitioner guilty of the charges preferred against him. However, the three members of said committee were not in agreement as to the measure of discipline to be imposed, two recommending that the petitioner be suspended from the practice of law for a period of two years and the third being of the opinion that the petitioner should be disbarred. The Board of Governors, after denial of the petitioner's motion for leave to present additional evidence and for a hearing de novo, adopted the findings of the local administrative committee, with one exception as will herein-

after be noted, but reduced the period of suspension recommended by the majority of said committee to three months.

The second proceeding related to the petitioner's alleged failure to complete specific arrangements made with certain clients in relation to the prosecution of an appeal, with the result that, contrary to their wishes, the case was submitted to the appellate court for decision without oral argument by the petitioner. After several hearings in the matter, the local administrative committee found the charges to be sustained by the evidence and recommended the petitioner's suspension from the practice of law for a period of ninety days. The Board of Governors, after full consideration of the record and the petitioner's statement made at the hearing before it, adopted the findings of the local administrative committee, with a slight amendment in the interest of accuracy in the recital of the factual sequence of pertinent events, but recommended that the petitioner be disbarred.

The third proceeding arose out of the petitioner's practice of law while under suspension by order of this court for nonpayment of his dues to The State Bar. The local administrative committee found in accordance with the charges as made in the notice to show cause issued in the matter and recommended that the petitioner be suspended from the practice of law for a period of ninety days. The Board of Governors, on a review of the record, approved and adopted the findings of the local administrative committee but recommended the petitioner's disbarment.

As to the first two proceedings above listed, the petitioner directs his main argument to the insufficiency of the evidence to sustain the charges made therein against him. The third proceeding he does not question upon its factual basis, but he does contest the board's recommendation as being too harsh under the circumstances, and as a further objection he urges the invalidity of pertinent portions of the State Bar Act concerning the payment of dues and the assessment of penalties for noncompliance therewith. In all three proceedings he challenges the propriety of the action followed by the different local administrative committees and the board herein in predicating their respective disciplinary recommendations in part upon a consideration of the petitioner's past record and conduct. With these principal points of dispute in mind, it is necessary at the outset to recite in some

detail the prevailing factual situations as disclosed by the respective records herein.

## THE FIRST DISCIPLINARY PROCEEDING

### S. F. No. 16833

On October 16, 1939, one Theresa M. Peters consulted the petitioner with reference to the proper legal action to be followed for the recovery of title to a certain lot in Burlingame which she had formerly owned. In 1934 foreclosure proceedings were taken against this piece of property in behalf of the Union Building and Loan Association, which was then being liquidated by the State Building and Loan Commissioner. After informing the petitioner of these facts, Miss Peters stated that the commissioner had agreed to let her purchase the property but later had refused to abide by the arrangement and was then on the verge of selling it to some persons by the name of Skreden. The petitioner agreed to represent Miss Peters in the matter, and she in the course of one of her initial visits to his office—on October 16, 17, or 18, 1939—paid him $25 on an agreed fee of $50.

On October 19, 1939, the petitioner filed on behalf of Miss Peters and against the Skredens and certain fictitious defendants a quiet title action predicated upon the theory of adverse possession, and a *lis pendens* was duly recorded. (The petitioner claims that he instituted these legal proceedings in reliance upon Miss Peters' statement that she had paid taxes on the property for the preceding five years, but as shown in the findings made by the local administrative committee and adopted by the board, there was a sharp conflict in the evidence upon the question of whether the petitioner's client did so advise him, as well as upon the further consideration of whether she then mentioned the entry of a judgment taken against her in 1938 and quieting title in another with respect to this same property.) The Skredens filed an answer in the action disclaiming any interest in the property in question, but a corporation which had been served with summons as a fictitious defendant interposed an answer and cross-complaint, claiming ownership of the lot. Thereafter the petitioner in behalf of his client filed an answer to the cross-complaint, and the matter was set for trial on April 25, 1940.

The next time that Miss Peters discussed the pending quiet title action with the petitioner was on April 12, 1940. On

that occasion she gained the impression that the petitioner was not entirely familiar with all of the circumstances involved, and accordingly on April 14, 1940, she sent him a detailed letter recounting the pertinent facts with regard to the controversy over the property in question. Among other things, Miss Peters stated therein that "From 1934 to 1939 the Building and Loan Commissioner held title to the property . . . and during this period they paid all the taxes on the property," and that in a quiet title action brought by the commissioner in 1937 judgment was obtained against her with respect to this same property. On April 16, 1940, the petitioner answered this lengthy report received from Miss Peters, commented that "considerable research work" would be necessary before he could "predict the outcome," and requested that she remit the balance of the retainer fee.

On April 20, 1940, Miss Peters again consulted with the petitioner regarding the pending litigation, and he then informed her that preparation for the trial of the case would involve extra work, for which he would have to charge an additional fee. In accord with such proposal, Miss Peters paid him the sum of $20, and the petitioner signed a receipt therefor as follows: "Received of Therese M. Peters $20.00 on account of *trial fee* in *Peters* v. *Skreden, et al.* Balance $30.00." A few days later, pursuant to the agreement of the parties, Miss Peters was given in this matter a further credit of $5.00, an amount which she had originally paid to the petitioner on account of his contemplated services with reference to an entirely different affair but which were in fact never rendered by him—hence, the transfer. The petitioner arranged for the continuance of the trial of the case to May 31, 1940.

Meanwhile, for the purpose of verifying the facts recited in Miss Peters' letter of April 14, 1940, the petitioner checked the court records in Redwood City affecting the property in question. From such examination he found that the Building and Loan Commissioner had secured a judgment in 1938 quieting title to the premises, enjoining Miss Peters "from asserting any right, title, interest or estate whatsoever" therein, and decreeing a money award of $1,960 against her "for the unlawful withholding of possession" of the said property. According to the findings of the local administrative committee herein, the evidence as to the petitioner's next step in

the matter was in direct conflict. The petitioner testified that on May 9, 1940, he wrote to Miss Peters a letter stating, in substance, that she had no case because of the existence of the 1938 quiet title judgment, that in his opinion "it would be utterly futile to proceed with the trial," but that since the matter was set for hearing on May 31, 1940, there was ample time for her to "confer with other counsel if [she] be so advised." He also claimed to have repeated these statements to her in the course of a telephone call on May 30, 1940. Miss Peters denied receiving this letter from the petitioner and claimed that he gave her no oral notification either of his desire to withdraw from the case or of the new trial date. Without resolving this material conflict, the local administrative committee found that no formal steps were taken by the petitioner, pursuant to the provisions of section 284 of the Code of Civil Procedure, to effect his withdrawal as counsel for Miss Peters in the pending litigation; that he did not appear at the trial on May 31, 1940; and that on said day judgment by default was rendered against her and in favor of the cross-complainant in the action. Upon its consideration of the evidence on this point, the board, in adopting the findings of the local administrative committee, made its only exception thereto and expressly found that the petitioner "wrote and mailed to said Therese M. Peters said letter dated May 9, 1940."

The petitioner took no further action of any kind on behalf of Miss Peters in connection with the property in question, nor did he return, or make any offer to return, the $50, or any part thereof, paid by Miss Peters on account of this matter, as above stated. He justifies his retention of this sum upon the claim that the time he spent working on the case would warrant such charge. The present disciplinary proceeding was instituted in September, 1940, following Miss Peters' lodging of a complaint with The State Bar in July, 1940, and the preliminary investigation thereupon undertaken by the authorized local administrative committee.

Viewing this evidence in the light most favorable to the petitioner, it is clear that he failed to fulfill his professional obligations to his client, Miss Peters. Without regard for conflicts in the testimony, the following points stand undisputed: (1) the petitioner's acceptance of a payment from Miss Peters "on account of trial fee" in the pending quiet title litigation when he knew the facts would not support the

theory upon which he had commenced the action—adverse possession and the payment of taxes on the property for the preceding five years; (2) his knowledge prior to the scheduled trial date, from an examination of the pertinent court records showing the precise terms of a prior quiet title judgment entered against his client with respect to this same property, that persistence in the prosecution of the pending litigation might subject both him and Miss Peters to contempt of court proceedings; and (3) his failure under these circumstances to effect, in the manner provided by law, his withdrawal as the attorney in the case for Miss Peters, who admittedly had not agreed that he be relieved of his responsibilities therein and who, without the benefit of legal representation at the trial, suffered the entry of an adverse judgment by default in the matter. The petitioner advances many contentious claims—such as Miss Peters' lack of good faith in her original presentation of the facts to him, the meagreness of the fee retained by him for his services after the deduction of necessary expenditures made by him in connection with the commencement of the quiet title action, and the absence of damage sustained by her by reason of the entry of the default judgment, since no act or omission on his part could prevail against the bar of the prior judgment against her. However, these arguments cannot nullify the importance of the following matters: (1) the petitioner's acceptance of money for the purpose of prosecuting the quiet title proceedings begun by him *after* he had received from his client a definite statement of the true facts in the case showing that she had no cause of action therein; (2) his failure to return said money to her; and (3) his neglect to appear at the trial of the quiet title action, in explanation of his position, while still charged as her counsel of record. Also immaterial to the main issue of the petitioner's duty to Miss Peters as his client is his elaborate recital of her past negotiations with the Building and Loan Commissioner and various realty men in her efforts to reacquire the lot in question—matters which formed the basis of his request for leave to present additional evidence and for a hearing de novo before the board, and which that body properly deemed irrelevant in denying his application. Suffice it to say at this point that with reference to disciplinary proceedings the definition of turpitude as anything done ''contrary to justice, honesty,

modesty or good morals'' has long been approved by this court (*Marsh* v. *State Bar*, 210 Cal. 303, 307 [291 P. 583]; *Dudney* v. *State Bar*, 214 Cal. 238, 240 [4 P.2d 770], and within this concept the petitioner's misconduct in relation to his duties and obligations as an attorney is clearly included.

## THE SECOND DISCIPLINARY PROCEEDING

### S. F. No. 16881

In the prosecution of an appeal from an adverse judgment in a certain negligence action, Doris Zwerin Unger and her son, Kenneth Carlton Zwerin, also an attorney, in November, 1941, employed the petitioner to write the briefs and make the oral argument before the District Court of Appeal of this state. The briefs were prepared, the petitioner received $100 for his work in connection therewith, and the printing and filing expenses were paid by his clients. The case was then set for hearing by the District Court of Appeal in Los Angeles on May 20, 1942, and it was agreed that the petitioner should make the oral argument there, for which services his compensation would be $50, to be paid as follows: $25 in cash and two railroad tickets from San Francisco to Los Angeles and return on the Daylight Limited for himself and his wife. On account in this matter, Mr. Zwerin some time during the latter part of April, 1942, gave the petitioner $5.00. Thereafter, and on May 18, 1942, in the early afternoon, there was delivered to the petitioner in the office of Mr. Zwerin by the latter's secretary an envelope containing a check for $20 and two round-trip railroad tickets as specified. The petitioner took the check, which he subsequently cashed, but he left the envelope with the tickets therein enclosed and stated that he would return at 3:30 p. m. on that day. He did not so return to Mr. Zwerin's office, but Mrs. Herron did go there that afternoon and obtained the tickets. The following morning, May 19, 1942, she presented them to the Southern Pacific Company and secured a refund therefor, an amount originally paid by Mr. Zwerin. She thereupon advised Mr. Zwerin's office of her action and suggested that the money be collected from her husband, the petitioner. No part of the $50 so advanced was ever returned by the petitioner to his clients. In explanation of this remissness, he claims that Mr. Zwerin's refusal several days later to discuss the matter further with him precluded his making proper amends.

The petitioner failed to make the scheduled trip to Los Angeles, he failed to present an oral argument in the case before the District Court of Appeal as he had theretofore agreed to do, and he failed to notify his clients in time that he would not so appear in court so that they might procure other legal representation in the matter. Thereafter, and on May 20, 1942, when, in accordance with the calendar of said court, the Zwerin case was called for hearing, a notation was made therein that argument was waived and the cause was ready for submission; in June, 1942, the court so ordered, and thereafter the judgment was affirmed against the petitioner's clients. (*Zwerin* v. *Riverside Cement Co.,* 52 Cal.App.2d 715 [126 P.2d 920].) On July 1, 1942, the petitioner was served with a notice to appear and show cause before a local administrative committee of The State Bar why he should not be disciplined for professional misconduct as charged by reason of the foregoing factual situation.

The only point of conflict in the record relates to the financial arrangement between the petitioner and his clients with respect to his presentation of the oral argument upon the submission of their case to the District Court of Appeal for decision. The petitioner admits that he very strongly outlined to Mr. Zwerin and his mother the great advantage of the proposed procedure before said court, and accordingly they, while satisfied with the briefs prepared by the petitioner in the matter, were most anxious that he perform this additional service if it would be of such benefit to their appeal. As to the point here in controversy, the petitioner refers to his testimony before the local administrative committee to the effect that the agreement on the subject contemplated his receipt of $50 expense money *plus* the above mentioned railroad transportation for him and his wife, and he argues that when the cash amount was not forthcoming at the time of his scheduled departure from San Francisco, he was justified in not making the trip as planned. But contrariwise, Mr. Zwerin testified that the terms of the understanding comprehended no more than the full payment of $50 to the petitioner—$25 in cash and $25 for the railroad fare—and this account was embodied in the findings of fact made by the local administrative committee and approved by the board. In attacking the so accredited arrangement, the petitioner claims that it was absurd on its face—allowing the petitioner but $25 to defray his expenses in Los Angeles

over a period of several days consequent of a likely delay in the calling of the Zwerin case for oral argument by reason of a crowded court calendar. But the conflict on the point is immaterial, for whether the petitioner was to receive an expense allowance of $50 or $25 in addition to the mentioned railroad transportation, the record conclusively establishes: (1) that, without notice to his clients that the sum advanced was insufficient as he understood their agreement respecting his compensation, he accepted the smaller amount and his wife secured the railroad tickets for the planned trip; and (2) that he failed to go to Los Angeles to make the oral argument in his clients' case before the District Court of Appeal. Moreover, there is evidence that factors other than monetary considerations actuated the petitioner's acceptance of the now disputed arrangement: (1) his extension of professional courtesy to a fellow attorney; (2) his hope of future appeal work from this initial contact; and (3) his plan to combine business with pleasure on the contemplated Los Angeles trip so that he and his wife might enjoy a "small vacation." In this condition of the record, the petitioner's failure to appear in the appellate court for oral argument of the Zwerin case constituted a most serious and flagrant breach of his professional duty.

## The Third Disciplinary Proceeding

### S. F. No. 16959

The record herein shows without conflict the following facts: After the petitioner had been given the statutory notice of his delinquency and demand had been duly made upon him for certain fees and penalties prescribed and required by law (Bus. & Prof. Code, chap. 4, art. 8, § 6143), this court, by its order of November 23, 1942, suspended the petitioner from the practice of law in this state (Bar Misc. 1752), and the period of suspension remained in effect until June 3, 1943, when he was reinstated by payment of dues and arrears. Meanwhile and on May 4, 1943, the petitioner had filed in the Superior Court for Marin County in this state a complaint in an action for damages and a petition in a related guardianship proceeding, wherein he designated himself respectively as "attorney for the plaintiffs" and "attorney for the petitioner." On May 11, 1943, the petitioner was directed to appear before a local administrative committee of The State Bar to show cause why he should not

be disciplined for his disregard of the order of this court suspending him from practice. (Bus. & Prof. Code, ch. 4, art. 6, § 6103.) Some three weeks following the issuance of the order to show cause in this matter the petitioner paid all arrearage shown on the records of The State Bar to be outstanding against him and thus effected his reinstatement as an active member of the profession on June 3, 1943, as above mentioned.

After a hearing at which the petitioner appeared in his own behalf, the local administrative committee found the petitioner to be guilty as charged by reason of his filing of the two pleadings above noted. It also found specifically that eleven prior disciplinary proceedings had been filed against him. Of these, four were consolidated for consideration by. this court and resulted in an order of suspension from practice for a period of one year (*Herron* v. *State Bar*, 212 Cal. 196 [298 P. 474]); two are those heretofore recited as now pending determination in this court (S. F. Nos. 16833 and 16881) and, as stated in the fore part of this opinion, respectively carry recommendations of suspension from practice for three months and disbarment; two were dismissed by the Board of Governors after formal hearing; and the remaining charges were characterized by the respective preliminary investigating committees as not calling for disciplinary action, so that The State Bar proceeded no further in those matters. As a conclusion from its findings herein the local administrative committee observed that while it "was not impressed with the explanation of [petitioner] that he was without actual notice or knowledge that the order of suspension was in force and effect on the date when he filed the proceedings which formed the basis of the notice to show cause herein," it was of the view that "the violation complained of was the result of a careless, rather than a wilful, disregard of the court's order and that severe disciplinary action which otherwise might be considered proper in the light of prior charges, is not warranted herein." Accordingly, it recommended that the petitioner be suspended from the practice of the law for a period of ninety days.

The petitioner did not appear at the time set for the hearing of this matter before the Board of Governors, but prior thereto he had advised said body by telephone that "he wished to waive oral argument and was willing to have the

proceeding submitted. on the record." Thereupon, after full consideration and discussion of the matter, the findings of fact as made by the local administrative committee were approved and adopted by the board. However, it rejected the local administrative committee's disciplinary recommendation, and instead, upon a more stern view of the petitioner's instant infraction in the light of his past conduct, recommended the extreme penalty of disbarment. Without detailing the petitioner's testimony offered in explanation of his action in having engaged in the practice of law during the period of his suspension for the nonpayment of State Bar dues, suffice it to say at this point that such evidence in the record attests the propriety of the conclusion above quoted from the local administrative committee's report in this matter and constrains this court to regard that body's recommendation as more commensurate with the nature of the offense. here involved.

The petitioner's challenge of the constitutionality of pertinent provisions of the State Bar Act prescribing the power of the Board of Governors to fix and collect membership dues and assess penalties (Bus. & Prof. Code, ch. 4, art. 8, §§ 6140-6145) requires no extended discussion here. The validity of the State Bar Act as a regulatory measure under the police power has been heretofore determined by this court, and it has been held that the reasonable expenses necessary to pay the costs of enforcement of the act, in furtherance of the purposes thereof, may be imposed upon the membership in the form of fees or dues. (*Carpenter* v. *State Bar*, 211 Cal. 358, 360 [295 P. 23]; *Hill* v. *State Bar*, 14 Cal. 2d 732, 735 [97 P.2d 236].) The petitioner relies with much confidence upon *City of Sonora* v. *Curtin*, 137 Cal. 583 [70 P. 674]. However, that case has no application here. It merely stands for the proposition that a *city* may not impose upon an attorney, licensed as such by the courts, a tax for *revenue purposes only* where his acts fall short of carrying on a business within its jurisdiction, and accordingly, a municipal ordinance providing, without qualification, that "*every lawyer* shall pay" a quarterly license would be invalid as a revenue measure. Upon such basis the case is fully distinguished in *In re Galusha*, 184 Cal. 697, 700 [195 P. 406] and in *In re Johnson*, 47 Cal.App. 465, 468 [190 P. 852]. Insofar as the cited opinion in the course of discussion negatives a *city's power to regulate the practice of law*, it simply

accords with the settled principle that such an undertaking by a municipality would constitute *an interference with state affairs*. (*City of Sonora* v. *Curtin, supra,* pp. 587-588; *cf. In re Galusha, supra,* p. 699.) Wholly distinct from the problem there considered is the present situation involving the Board of Governors' imposition of an annual fee upon a practicing attorney as a purely *regulatory exaction authorized* within prescribed limits *by the Legislature in furtherance of the purposes of the State Bar Act.* (*State Bar of California* v. *Superior Court,* 207 Cal. 323 [278 P. 432].) ▮ Accordingly, for failure to pay membership dues, an attorney is properly subject to suspension from practice within this state. (*Carpenter* v. *State Bar, supra; Hill* v. *State Bar, supra.*)

▮ There now remains for consideration the measure of discipline appropriate to the determination of the pending proceedings. The petitioner is fifty-eight years of age and was admitted to the practice of law in this state in October, 1909. The respective records herein disclose that in the course of his legal career and beginning with the year 1927, the petitioner has had frequent difficulties with his clients concerning money transactions and his failure to give reasonably prompt attention to the matters entrusted to his care. As heretofore noted, they had varying results insofar as disciplinary considerations are concerned: some, as consolidated for hearing, culminated in this court's order that the petitioner be suspended from practice for one year (*Herron* v. *State Bar* (1927), *supra,* 212 Cal. 196), some were dismissed by the Board of Governors upon recommendation of the respective local administrative committees involved, and in the others no formal proceedings were instituted on the complaints lodged with The State Bar. ▮ Regardless of any argument as to whether or not it is proper here to attach any importance to previous charges for which no discipline was administered, certainly those infractions for which the petitioner was suspended from practice for a limited period (*Herron* v. *State Bar, supra*) should be taken into account in fixing the degree of discipline to be imposed in relation to the professional misconduct subject of the present proceedings. (*Ring* v. *State Bar,* 4 Cal.2d 196, 197-198 [47 P.2d 704]; *Mills* v. *State Bar,* 6 Cal.2d 565, 567 [58 P.2d 1273]; *Petersen* v. *State Bar,* 21 Cal.2d 866, 871 [136 P.2d 561].)

 The petitioner's reference to various principles of criminal law as negativing the propriety of considering herein such established prior wrongdoing—professional misconduct for which a measure of discipline has already been exacted (*Herron* v. *State Bar, supra*)—has no bearing upon the disposition of disciplinary proceedings, which "this court has uniformly treated . . . as peculiar to themselves and governed exclusively by the code sections specifically covering them." (*Marsh* v. *State Bar,* 2 Cal.2d 75, 78 [39 P.2d 403].) As was said in *Prime* v. *State Bar,* 18 Cal.2d 56, 62 [112 P.2d 881], wherein the analogy of rules of criminal practice and procedure was likewise advanced and rejected: "The important factor is whether the attorney lacks the necessary and proper moral qualifications to continue in practice." Also to complete this recital of the petitioner's previous professional difficulties, mention should be made of The State Bar's application to this court in 1932 for his disbarment upon the record of his conviction of a misdemeanor involving moral turpitude and the denial of such summary discipline upon the ground that the trial court's order in the criminal action "suspending sentence" was equivalent to an order of probation. (*In re Herron,* 217 Cal. 400 [19 P.2d 4]; *cf. In re Phillips,* 17 Cal. 2d 55 [109 P.2d 344, 132 A.L.R. 644].)

 In the determination of the measure of discipline warranted in connection with the present charges against the petitioner, regard need only be had for such past misconduct as has been heretofore established (*Herron* v. *State Bar, supra*), and it will be given no more than its just consideration for the protection of the public, the legal profession and the courts. (*Marsh* v. *State Bar, supra,* at p. 79.)

 While on the basis of the three factual situations now under review, it is not necessary for this court to pass upon the petitioner's professional integrity, the evidence here does disclose his complete disregard for the fiduciary relation of an attorney to his clients and an absence of fair dealing in handling their affairs. In both the Peters and Zwerin matters—the first two proceedings hereinabove outlined—the petitioner indisputably accepted fees without rendering the stipulated services and without making some adequate arrangement for the legal representation necessary in those cases. The petitioner's communication to Miss Peters relative to the lack of merit in her quiet title action shortly before the trial date would not excuse him from adhering to the

fee arrangement made with her and appearing at the scheduled hearing so as to prevent the entry of a default judgment against her while he still remained as her counsel of record. Still more objectionable is the petitioner's remissness in his professional obligations in the Zwerin situation by reason of his failure, *without prior warning or explanation*, to make the trip to Los Angeles to present the oral argument in the appellate court as agreed. These instances of grave misconduct gave his respective clients just and serious cause for complaint, and may not be condoned. In contrast, the remaining charge here involved—the petitioner's practice of law during the period of his suspension by order of this court for nonpayment of State Bar dues—becomes a matter of secondary importance. While obedience to orders of court must of course be required, the petitioner did secure his reinstatement shortly after his citation by The State Bar and his violation appears to have been "a careless, rather than a wilful, disregard" of duty. From this aspect such infraction pales in significance as a disciplinary cause here, and it need not be the subject of further reference.

After considering carefully the full record in the Peters and Zwerin cases, together with the petitioner's prior record as heretofore limited, in order to determine his fitness to continue in practice, it is impossible to reach any conclusion but that his disbarment is warranted. Whatever might be said in favor of a milder punishment for single infractions not involving deliberate moral turpitude, there can be no doubt that any lawyer who is guilty of successive breaches of duty with relation to the management of his clients' affairs should be deprived of the license under which he is authorized to practice law, and by which he has been recommended to the public as a person worthy of trust. This court has heretofore been lenient in its disposition of disciplinary charges against the petitioner (*Herron* v. *State Bar, supra,* 212 Cal. 196; *In re Herron, supra,* 217 Cal. 400), but this policy cannot continue when the petitioner persists in his neglect to avail himself of the opportunity to mend his ways. (*Marsh* v. *State Bar, supra,* 2 Cal.2d 75.) In making an order of disbarment this court should and does exercise much care, for the denial of an attorney's right to practice law in this state is a grave matter, placing an indelible stain upon his name which affects him generally as a citizen, as well as

depriving him of his chosen means of gaining a livelihood.
As was said in *Wilcox* v. *State Bar*, 2 Cal.2d 614, 621 [42
P.2d 631] : ''Once disbarred, experience teaches us that the
barrier which is thereby raised becomes almost insuperable
to reinstatement.'' But with due regard for the various
factors of consideration herein reflecting the petitioner's lack
of strength and stability in his moral concepts with relation
to his professional duties, no alternative is open to this court.

It is therefore ordered that the petitioner be disbarred from
the practice of law in this state and that his name be stricken
from the roll of attorneys, effective thirty days after the fil-
ing of this decision.

CARTER, J.—I dissent. While I agree that the conduct
of petitioner as disclosed by the record now before us war-
rants some discipline, I believe that the penalty of disbar-
ment is altogether too severe and grossly disproportionate to
the nature of the charges against him. It cannot be said
that any of the charges against petitioner amount to embez-
zlement or misappropriation of funds. The Peters and Zwerin
charges arose out of apparent misunderstandings with his
clients. They indicate that petitioner was somewhat lax in
the handling of his clients' cases, but in view of the finding
of the Board of Governors with respect to his advice to Miss
Peters relative to the lack of merit in her case shortly before
the time fixed for the trial, I do not think it can be said that
he was guilty of misconduct merely because he did not with-
draw from the case. He did advise her to obtain other
counsel.

The Zwerin case presents a different situation. In my
opinion, he should either have gone to Los Angeles and ar-
gued the case or returned the expense money to his clients.
His conduct in this case warrants some discipline.

In regard to practicing while suspended by order of this
court, I think the record shows a rather trivial infraction, and
in view of the fact that he became reinstated as soon as he
was cited to appear before The State Bar, I think that the
amount of discipline for this alleged misconduct should be
rather mild.

In the Peters case a majority of the local administrative
committee recommended that petitioner be suspended for a
period of two years. The Board of Governors adopted the
findings of the local administrative committee with one excep-

tion, but reduced the period of suspension recommended by the majority of said committee to three months.

In the Zwerin case the local administrative committee unanimously recommended petitioner's suspension from the practice of law for the period of ninety days. The Board of Governors adopted the findings of the local administrative committee with a slight amendment, but recommended that petitioner be disbarred.

In the third proceeding, which arose out of petitioner's practice of law while under suspension by order of this court for nonpayment of his State Bar dues, the local administrative committee recommended that petitioner be suspended for a period of ninety days. The Board of Governors approved the findings of the local administrative committee, but recommended that petitioner be disbarred.

It is obvious that petitioner's conduct in the Peters case did not impress the members of the Board of Governors as being of serious import, or that there were extenuating circumstances which the board considered in ameliorating the discipline which should be administered, as the board recommended a suspension for the period of only ninety days. It is likewise obvious that petitioner's conduct in the other two cases did not impress the members of the respective local administrative committees as being of serious import, as each of said committees recommended a suspension for a period of only ninety days in each of these cases. While the cumulated charges indicate a course of conduct which reflects more unfavorably upon petitioner than a single charge, I am disposed to the view that the only one of the three charges against petitioner of any consequence arises out of his conduct in the Zwerin case. While his conduct in that case, based upon the findings of the local administrative committee, is reprehensible, it certainly is not of sufficient gravity to justify petitioner's disbarment, especially in view of the recommendation of the local administrative committee that he be disciplined by suspension from practice for the period of ninety days. And even if we conclude that petitioner was guilty of unprofessional conduct arising out of the other two charges against him, the combined effect of these charges, in my opinion, is not sufficient to warrant the infliction of the extreme penalty of disbarment.

While I would concur in a judgment suspending petitioner

from practice for a short period of time for his conduct in connection with the Zwerin case, I find nothing in the record in any or all of these cases to support or justify a judgment of disbarment.

Petitioner's application for a rehearing was denied May 1, 1944. Carter, J., voted for a rehearing.