[L. A. No. 19285. In Bank. Apr. 20, 1945.]

LLOYD CORNELIUS GRIFFITH, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

274

Thomas L. Griffith, Jr., Loren Miller and Ivan J. Johnson, III, for Petitioner.

Nixon A. Lange and Jerold E. Weil for Respondent.

THE COURT.—This is a proceeding to review an order of the Board of Governors of The State Bar recommending that the petitioner be suspended from the practice of the law in this state for a period of three years. The board adopted, with minor amendments, the findings of the local administrative committee, but rejected the committee's recommendation of disbarment. Petitioner challenges the sufficiency of the evidence to support the findings or to show acts warranting discipline, complains of the admission in evidence of his former disciplinary record, and contends that the violations of which he has been found guilty exceed those charged.

Petitioner was charged, in connection with his representation in the federal court of one Leon Russell, with the commission of acts involving moral turpitude and dishonesty, with violation of his oath and duties as an attorney, and with commingling with his own funds and expending for his personal uses the sum of $500 paid to him for the purpose of purchasing a cash bail bond for his client.

Petitioner was admitted to practice in this state in Novem-

ber, 1932. Although prior complaints have been lodged against him he has not heretofore been subjected to discipline.

▇▇ In August, 1943, Leon Russell was arrested for illegal possession of "gas" coupons. On recommendation of his pastor he consulted petitioner. Petitioner represented him on the preliminary hearing. The charges were dismissed for lack of supporting evidence and he paid petitioner a fee of $150. A few days later one James Carter was arrested and Leon Russell paid to the petitioner a fee of $250 for representing Carter. In November, 1943, Russell was again arrested on a similar charge, and his wife arranged through the pastor to have the petitioner visit him in jail. A fee of $500 for defense was agreed upon and the cause came on for trial on November 30th. Prior to that date Russell paid to the petitioner $450 of the agreed $500. The trial was commenced and completed in the afternoon of November 30th. Russell was convicted and sent to the county jail.

On December 23, 1943, the petitioner telephoned Mrs. Russell and told her that her husband's bail had been set, and that the bond would cost $500. Anticipating this requirement Mrs. Russell had borrowed $500 from a Mrs. Tate. She immediately took the sum in cash to petitioner's office. She told him that "it was strictly bail bond money, that it had no connection with fees." Petitioner agreed, assuring her that he would have Russell out of jail that night, and he gave her a written receipt for $500 bearing the notation "Bail Bond." No bond was ever purchased and Russell was not released. In January, 1944, while he was still in the county jail he told the petitioner in the presence of Mrs. Russell that he had changed his mind about an appeal bond and he instructed the petitioner to return the $500. Petitioner promised to do so, but failed to perform.

Another attorney was later employed by Mrs. Russell to recover the money. He testified that he checked the records of the criminal case against Russell and they disclosed that bail had never been fixed. Russel was sent to a prison camp in Arizona on January 26, 1944. He made application for parole through the parole office at the camp and claims to have received no services from the petitioner in this connection. Except for receiving one letter, he never saw or heard from the petitioner until August, 1944, after he had been paroled. Petitioner, however, claims to have written certain

letters and held certain interviews in his behalf concerning the parole.

Mrs. Russell made numerous requests of the petitioner for the return of the $500. On one occasion, she stated, he told her that he had deposited the money in a bank in the name of Mrs. Tate, and once or twice he mentioned transcribing fees. He told Mrs. Tate, when she also demanded a return, that he was holding the money because of the $50 which Russell still owed him on his fee. In May, 1944, Mrs. Russell retained the other attorney, to whom the petitioner paid $250 on July 2nd, and agreed in writing to pay the balance on July 7th. At no time did the petitioner deny to the attorney that he owed the money or that he had received it solely for bail bond purposes.

In September, 1944, the present disciplinary proceeding was commenced on the complaint of Mrs. Russell. Petitioner did not appear at the first hearing in September, nor at a subsequent hearing set in October to give him a further opportunity to attend. On October 25th the local committee filed its findings and recommendation of disbarment. On November 15th petitioner gave Mrs. Russell $273, in payment of the balance of the $500 with interest. On November 17th he appeared before the Board of Governors. He testified that he did not consider the matter of sufficient importance to make an effort to attend the hearings before the local committee. In the course of his explanations, by which he attempted to justify his action, he stated that no demand was made upon him for the return of the $500 prior to the demand made by Mrs. Russell's attorney. He admitted that both Mrs. Russell and Mrs. Tate had been to his office, but claimed that they were consulting him about the situation of Mr. Russell. He denied the charge of commingling, stating that he kept the $500 around his house, that he had no bank account, and that he didn't return the full amount to the attorney on demand because he wanted an adjustment of his fee for services rendered Russell after conviction.

The Board of Governors amended the findings of the local committee to show the fact of payment of the balance of the $500, and upon consideration of petitioner's statement, together with the record made before the local committee, recommended a three-year period of suspension.

Petitioner's attack upon the sufficiency of the evidence

falls before the substantial proof contained in the record in support of the findings. The plea of full repayment as a mitigating circumstance is met by the fact that the repayment was made only under the pressure of an attorney's demand and the pendency of the present proceeding.

 The notice to show cause was sufficient. It charged the facts concerning the $500 transaction, with specific allegations as to petitioner's refusal to return the money, and his expenditure of it for his own personal use. It charged petitioner not only with commingling but also with violation of his oath and duties as an attorney within the meaning of section 6103 of the State Bar Act, as prescribed by sections 6067 and 6068, with violation of rule 9 of the Rules of Professional Conduct, and with the commission of acts involving moral turpitude and dishonesty within the meaning of section 6106. The allegations were not limited, as petitioner argues, to accusations of commingling, and the evidence supports not only the finding on that accusation but also the conclusion that petitioner committed the other violations mentioned.

 Petitioner complains that although he was not charged with any act of prior misconduct, nevertheless the local committee received in evidence his entire disciplinary record, including twelve complaints which were disposed of after preliminary investigation and which did not result in the issuance of a notice to show cause, and one formal proceeding which was dismissed by the Board of Governors. A new rule of procedure subsequently adopted by the board and now in effect limits the introduction of a prior record. At the time this matter was heard by the committee and reviewed by the board, however, there was no prohibition against the admission of such evidence. The findings of the committee show that it considered the prior record in making its decision to recommend disbarment rather than suspension, but there is no indication that the board also considered that record in recommending a period of suspension. This court has not included the prior record in its consideration in holding that petitioner has failed to sustain the burden of showing that the findings are not supported, and in imposing the degree of discipline recommended by the Board of Governors. (*Herron* v. *State Bar*, 24 Cal.2d 53 [147 P.2d 543] ; *Copren* v. *State Bar*, 25 Cal.2d 129, 139 [152 P.2d 729].)

It is ordered that the petitioner Lloyd Cornelius Griffith be and he is hereby suspended from the practice of the law in this state for the period of three years, commencing thirty days after the date of the filing of this order.

Schauer, J., did not participate therein.