[Civ. No. 65657. Second Dist., Div. Three. Aug. 24, 1983.]

STEVEN J. STANWYCK, Plaintiff and Appellant, v.
DAVID HORNE et al., Defendants and Respondents.

## COUNSEL

Arthur E. Schwimmer for Plaintiff and Appellant.

Waters, McCluskey & Corcoran, Paul N. Gautreau, Spector, Buter & Cone, Irwin Buter, Salley E. Dichter, Peterson, Lawrence, Bower & Baraban, Cheryl B. McDonald and Thomas I. Friedman for Defendants and Respondents.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Robert M. Sweet as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

## LUI, J.—

### SUMMARY

The Rules of Procedure of the State Bar of California (Rule(s)) provide for an independent investigation of complaints made by persons against attorneys. Where such an investigation occurs or is presumed to have occurred, no action for malicious prosecution will lie even if the bar proceedings are terminated in favor of the attorney.

### FACTUAL[1] AND PROCEDURAL BACKGROUND

Appellant Steven J. Stanwyck, a member of the State Bar, filed a complaint in the superior court against respondent David Horne and several Doe defendants[2] alleging causes of action for malicious prosecution of an administrative proceeding and conspiracy.

The complaint alleges that in January 1975, Horne, acting for himself and as agent for the other respondents, initiated without probable cause a false

---

[1]The facts of the appellant's action are taken essentially from his complaint which was successfully attacked by respondents' general demurrers without leave to amend. On demurrer, all material facts properly pleaded and all reasonable inferences which can be drawn therefrom are deemed admitted. (See *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].)

[2]The complaint also named Larry Hendler as a defendant. However, Hendler is not a party to this appeal.

complaint against Stanwyck with the State Bar accusing Stanwyck of unprofessional and unethical conduct. As a result of the charges, the State Bar initiated a preliminary investigation. Subsequently, a formal hearing was conducted by the State Bar's local administrative committee which found the charges against Stanwyck untrue and terminated the proceedings.

Each of the respondents filed general and special demurrers. The trial court sustained the general demurrers, basing its ruling on this division's opinion in *Werner* v. *Hearst Publications, Inc.* (1944) 65 Cal.App.2d 667 [151 P.2d 308], and dismissed Stanwyck's complaint pursuant to Code of Civil Procedure section 581, subdivision 3. Stanwyck filed a timely notice of appeal from the order of dismissal.

### APPELLANT'S CONTENTIONS ON APPEAL

Stanwyck contends that the *Werner* decision is incorrect and inconsistent with our Supreme Court's decision in *Hardy* v. *Vial* (1957) 48 Cal.2d 577 [311 P.2d 494], and the decision in *Miley* v. *Harper* (1967) 248 Cal.App.2d 463 [56 Cal.Rptr. 536].

He also contends that under section 680 of the Restatement of Torts,[3] which was adopted by *Hardy* v. *Vial, supra,* 48 Cal.2d 577, a person who lodges a complaint before an administrative body is subject to an action for malicious prosecution and that respondents "initiated" such a complaint against him despite the State Bar's own investigation.

We disagree with Stanwyck's contentions.

---

[3]Section 680 of the Restatement of Torts (1938) declares: "One who initiates or procures the initiation of civil proceedings against another before an administrative board which has power to take action adversely affecting the legally protected interests of the other, is subject to liability for any special harm caused thereby, if (a) the proceedings are initiated (i) without probable cause to believe that the charge or claim on which the proceedings are based is well founded, and (ii) primarily for a purpose other than that of securing appropriate action by the board, and (b) the proceedings have terminated in favor of the person against whom they are brought."

This section was later amended in the Restatement Second of Torts, and now reads: "One who takes an active part in the initiation, continuation or procurement of civil proceedings against another before an administrative board that has power to take action adversely affecting the legally protected interests of the other, is subject to liability for any special harm caused thereby, if [¶] (a) he acts without probable cause to believe that the charge or claim on which the proceedings are based may be well founded, and primarily for a purpose other than that of securing appropriate action by the board, and [¶] (b) except where they are ex parte, the proceedings have terminated in favor of the person against whom they are brought."

DISCUSSION

I

*Hardy v. Vial Is Distinguishable and Has No Application to State Bar Disciplinary Proceedings*

On the surface, the decision in *Hardy* v. *Vial, supra,* 48 Cal.2d 577, may seem inconsistent with the decision in *Werner, supra,* 65 Cal.App.2d 667. But, a close review reveals important distinguishing facts.

Plaintiff Hardy was discharged from his employment as a professor at Long Beach State College as a result of charges made by the defendants. The defendants included seven persons (the "school defendants") who were officials of the college or of the State Department of Education and three persons, Vial, Pond, and Egolf, who had no connection with the college or the department. One of the school defendants was Roy Simpson, the Director of Education of the State of California. General demurrers of Vial and the school defendants to Hardy's complaint were sustained without leave to amend and Hardy appealed from the ensuing judgments.

The allegations of Hardy's complaint were as follows: Defendants wrongfully, maliciously and without probable cause conspired to falsely accuse him of gross immorality and unprofessional conduct during the period of his employment for the purpose of procuring his dismissal. Pursuant to the conspiracy, Vial, Pond and Egolf, aided and abetted by the other defendants, made and filed with the college affidavits falsely charging him with the commission of base and depraved acts. Because of these affidavits and the acts alleged therein, he was dismissed from his employment at the college. After a hearing, the State Personnel Board found that the charges were untrue and that the grounds for the dismissal were not sustained by the evidence. The board revoked the dismissal and ordered Simpson to return Hardy to his position at the college. No review of the board's decision was sought and Hardy was returned to his position.

The decision in *Hardy* v. *Vial* did not specify the nature of the administrative proceedings which were instituted to obtain Hardy's dismissal by Simpson. The nature of those proceedings appear to have been pivotal to the court's decision. We have taken judicial notice of the records on appeal in *Hardy* v. *Vial* pursuant to Evidence Code section 459, subdivision (c), and have determined that the Education Code sections then in effect[4] pro-

---

[4] The specific references in parenthesis are to the pertinent provisions of the Education Code in effect at the time of Hardy's dismissal.

vided for the dismissal of Hardy as a faculty member of the state college based on the recommendation of defendant Peterson who was the president of Long Beach State College. (See former § 20393.) If based on grounds of "gross immorality or gross unprofessional conduct," the dismissal could have been effectuated without prior notice to the faculty member, Hardy, provided the notice of dismissal specified an effective date of such dismissal. (See former § 20393.) These former Education Code provisions permitted a dismissal of Hardy without any hearing. Hardy, however, was entitled to demand a review hearing before the State Personnel Board. (See former § 20394.)

Thus, the situation in *Hardy* fits squarely within section 680 of the Restatement of Torts: (1) each of defendants was accused of initiating or procuring the initiation of the administrative proceedings against him; (2) the administrative body, namely the Department of Education, through its Director Simpson, had the power to adversely affect Hardy's legally protected interest, i.e., his employment status; (3) the proceedings were allegedly instituted without probable cause or foundation for the purpose of securing action by the administrative body; and (4) the proceedings were terminated in Hardy's favor.

More specifically, it appears that defendants' affidavits were the *sole* basis upon which the recommendation for dismissal and dismissal of Hardy were effectuated.[5] Furthermore, there is no indication that any hearing was conducted prior to Hardy's dismissal; the only hearing that was apparently conducted was the subsequent hearing on appeal before the State Personnel Board. Our Supreme Court concluded that an action for malicious prosecution could be stated against the nonschool defendant Vial but not against the school defendants since they were immune from civil liability.

The administrative proceedings conducted in *Hardy* v. *Vial, supra,* 48 Cal.2d 577, are quite distinguishable from the State Bar disciplinary proceedings which we shall discuss in detail in the next section.

## II

*The Holding in Werner Is Applicable to This Appeal*

A. *The Holding in Werner Precludes a Malicious Prosecution Action Against a Person Who Complains to the State Bar*

In *Werner, supra,* 65 Cal.App.2d 667, the trial court sustained defendant's general demurrers to Werner's complaint without leave to amend and

---

[5]The decision in *Hardy* v. *Vial* states at 48 Cal.2d, page 583: "The seven school defendants occupied positions which would ordinarily embrace duties relating to the investigation of charges which could lead to the discipline or dismissal of persons such as plaintiff, and it is not claimed that the school defendants were without authority to investigate and prosecute charges made against employees."

a judgment of dismissal followed. Werner's complaint alleged that the defendants, without probable cause and with malice, instigated a disbarment proceeding against him before the State Bar by sending a letter to a special investigator for the State Bar. The letter claimed that Werner had given "false testimony" in a certain defamation action, thereby committing perjury. Werner contended that defendants' letter failed to make a full and fair disclosure of all testimony that was alleged to be false and that the State Bar relied on the letter and issued an order to show cause. Subsequently, a hearing was conducted before a local administrative committee. This committee thereafter made its findings of fact and recommendations to the Board of Governors which dismissed the proceedings after its review.

On appeal, the trial court judgment was upheld. The *Werner* decision took judicial notice of the State Bar rules pertaining to disciplinary proceedings of members with particular reference to rules 10 and 11.[6] These two rules provided that a preliminary investigation was to be conducted before a formal proceeding could be instituted by the issuance of a notice to show cause. Since Werner's complaint did not allege that the State Bar had *not* conducted a preliminary investigation, the *Werner* decision held that it must be presumed that the members of the local administrative committee, being public officers, regularly performed their duties and made an investigation as provided for in rule 10. The *Werner* court stated, "[i]n view of the presumption that such an investigation was made, and in view of the statement in the copy of the notice to show cause attached to the third amended complaint that such an investigation was in fact made, it should be concluded, upon consideration of the demurrer, in the absence of an allegation that such investigation was not made, that a preliminary or independent investigation was made by the committee before the proceeding was instituted. The proceeding was not instituted by the sending of the [defendant's] letter of August 14, 1941, to The State Bar. It was instituted, as above noted, by the issuance of the notice to show cause by The State Bar on December 12,

---

[6]Rules 10 and 11 of the Rules of Procedure of the State Bar in effect at the time *Werner* was decided provided in pertinent part as follows:

Rule 10: "Preliminary Investigation. Before the institution of any formal proceeding against a member of the State Bar by the issuance, in accordance with the provisions of rule 11, of a notice to show cause, a preliminary investigation shall be made by a committee to determine whether formal proceedings should be instituted and a hearing held. The member shall be allowed an opportunity to be heard in the course of the preliminary investigation. . . . Such a preliminary investigation shall follow the presentation to the State Bar or to any local administrative committee of charges, whether formal or informal, verified or unverified, written or oral. . . ."

Rule 11: "Notice to Show Cause. (1) Every formal proceeding shall be instituted by the issuance of a notice to show cause. . . . If after a preliminary investigation the committee concludes that formal proceedings should be instituted and a hearing held, the committee shall issue a notice to show cause, directing the member to appear before it . . . to show cause why he should not be disciplined. . . ."

1941, about three months after the letter was received. It is to be noted that the situation here is different from the usual malicious prosecution action which is based upon a proceeding instituted by the signing of a complaint by the one who is later a defendant in the action for damages. *Here the action is based upon a proceeding instituted by the signing of an order to show cause, not by one who is a defendant in this action for damages, but by a member of a local committee of The State Bar, after an independent investigation had been made by the local committee.* . . . The Supreme Court has said in discussing the Rules of Procedure of The State Bar: 'In fact, the preliminary investigation is an inquiry by officers of this court selected for the purpose of ascertaining the probable truth of the charge made.' (*Herron* v. *State Bar* (1931), 212 Cal. 196, at p. 200 [298 P. 474].) The obvious purpose of the investigation being to determine whether there was probable cause to institute the proceeding, is to be presumed, upon consideration of the demurrer, in the absence of an allegation to the contrary, that the investigation was relied upon by the committee. . . . " (*Id.,* at pp. 671-672.)

The *Werner* decision relied on the following statement from 38 Corpus Juris 397: " 'Where the prosecuting officer acts on an independent investigation of his own instead of on the statement of facts by the party making the complaint, the latter has not caused the prosecution and cannot be held liable in an action for malicious prosecution.' " (*Id.,* at p. 673.)

B. *Although Respondents Complained to the State Bar About Appellant, It Was the State Bar That Investigated and Decided to Institute Proceedings. There Is No Allegation That the State Bar Failed to Conduct an Investigation and It Must Be Presumed That One In Fact Occurred*

Stanwyck contends that the judicially noticed fact that the State Bar institutes formal disciplinary proceedings after a preliminary investigation does not negate, as a matter of law, respondents' initiations of the Bar proceedings or the lack of probable cause for such proceedings. Stanwyck urges us to reject the reasoning in *Werner,* contending that it is incorrect. We disagree.

The Rules[7] in effect in 1975 when appellant was the subject of the disciplinary proceedings are consistent with the rules in effect when *Werner* was

---

[7]The Rules were enacted pursuant to Business and Professions Code section 6086. Our citation to the State Bar Rules of Procedures are to the Rules in existence in 1975, when appellant was the subject of an investigation and disciplinary proceedings. These Rules have been redrafted and renumbered and are presently contained in Rules 501-534. Although the Rules as redrafted establish different procedures, these Rules set forth a mechanism for an independent investigation.

decided. Rule 21, subdivision (a), provided that, "a preliminary investigation shall be made by a committee to determine whether a formal proceeding should be instituted and a formal hearing held. The member shall be allowed an opportunity to be heard in the course of the preliminary investigation. [¶] In preliminary investigations the proceedings shall be informal, but thorough, with the object of ascertaining whether probable cause exists for the issuance of a formal charge or charges. [¶] A preliminary investigation may follow presentation to the State Bar of a complaint, whether formal or informal, verified or unverified, written or oral. This provision for a preliminary investigation shall not limit the authority of a State Bar attorney authorized to receive complaint to decline to entertain, without a preliminary investigation by a committee, a complaint which appears to be unfounded or frivolous or as to which, in his judgment, there is a lack of sufficient proof to support a determination of probable cause by the committee. [¶] The board of governors or a local administrative committee may in the absence of a complaint and on its own motion order a preliminary investigation to be conducted."

Rule 21, subdivision (b), provided that where documentary evidence is a substantial part of the proof of the disciplinary offense and the State Bar is in possession of such evidence and of substantial proof of elements of the indicated offense in the form of declarations or affidavits of persons with personal knowledge of the facts, notice to show cause may be filed against the member without a preliminary investigation.

Rule 21(a) provided that when a complaint is received by the State Bar, the complaint and available pertinent information should be forwarded to a preliminary investigation committee (appointed by the Board of Governors pursuant to Rule 5) for consideration within the earliest practical time. This rule states, "[t]he preliminary investigation committee shall investigate the complaint and obtain such additional information as it deems required. It may, and in *all* cases before a notice to show cause is issued shall, hold a preliminary investigation hearing. . . ." Unless the time is extended, the preliminary investigation committee shall determine within 90 days of the receipt of the complaint whether or not there is probable cause for the issuance of a formal charge or charges against the member. Rule 21(a) further provided that "[i]f it is determined that probable cause does not exist, the [preliminary investigation] committee shall order the matter terminated with a brief statement of the reasons in writing. If it is determined that probable cause exists, the committee shall, within 30 days thereafter, issue a notice to show cause containing the formal charge or charges . . . ."

Under Rule 21(b), a preliminary investigation committee, its chairman, an examiner or an authorized member of the State Bar staff may, in its

discretion, require a complainant to file a verified accusation or supply specific evidence or specific facts in support of the complaint.

Furthermore, even though Rule 19[8] provides that the complaining witness shall assist in the conduct of the preliminary investigation and provide the committee with documents and evidence in his possession, Rule 19 specifically requires that the preliminary investigation or formal proceedings proceed even if the complaining witness is unwilling or neglectful or even if a settlement, compromise or restitution has been made.

These Rules set forth a procedure for an independent investigation and determination by the State Bar whether to proceed on a complaint. Such was not the case in *Hardy* v. *Vial*. Absent an allegation in appellant's complaint that an investigation did not in fact occur, we must presume as did *Werner,* that one did occur. As a consequence, we hold that the State Bar, not respondents, initiated, procured or continued the disciplinary proceedings of Stanwyck. Therefore, Stanwyck failed to allege the elements required for a malicious prosecution of an administrative proceeding against respondents. (See *Hardy* v. *Vial, supra,* 48 Cal.2d at p. 580, and Restatement Second of Torts, § 680.)

### III

*Public Policy Dictates That a Person May Complain to the State Bar of One of Its Members Without Fear of a Subsequent Action for Malicious Prosecution*

Appellant relies on *Miley* v. *Harper, supra,* 248 Cal.App.2d 463, as support for its contention that *Werner* has subsequently been challenged. *Miley* is factually and procedurally distinguishable and involves an administrative proceeding instituted against a licensed contractor by one Harper, who claimed that Miley performed a job in poor workmanship fashion. The charges filed by the Contractors' State License Board against Miley were dismissed. Miley thereupon filed an action for malicious prosecution. Subsequently, Harper was successful in moving the trial court for summary judgment.

---

[8]Rule 19 then in effect stated, "[a] complaining witness shall assist in the conduct of the preliminary investigation and shall, upon request, in a preliminary investigation or formal proceeding, furnish the committee, examiner, or authorized member of the State Bar staff with all documents and other evidence in his possession and the names and addresses of witnesses, and shall otherwise assist the committee, examiner, or authorized member of the State Bar staff in securing evidence in support of the charges made. Neither unwillingness nor neglect of the complaining witness so to do, nor settlement, compromise nor restitution, excuses a committee from failing to undertake or complete a preliminary investigation or a formal proceeding."

The *Miley* opinion states at 248 Cal.App.2d at page 469, footnote 4, "[w]e think it is implicit in the opinion in *Werner* v. *Hearst Publications, Inc., supra,* that the court felt that the independent investigation which was presumably conducted consisted of more than a rereading of the letter the defendants had sent to the State Bar or an investigator's conversations with them. *We do not quarrel with this unarticulated premise in the case of the State Bar, but are unwilling to assume as a matter of course that it applies to investigations conducted by the registrar of the Contractors' State License Board pursuant to section 7090 of the Business and Professions Code.*" (Italics added.)

In *Miley,* the basis for the reversal of the summary judgment was the conclusion that the declarations of the deputy attorney general, which were submitted in support of Harper's motion for summary judgment, were an insufficient basis for the grant of summary judgment by the trial court since the declaration consisted almost entirely of conclusions and matters which could not have been within the personal knowledge of the deputy attorney general. The complaint was made to an investigator of the Contractors' State License Board who prepared an investigative report that was then submitted to the deputy attorney general for a decision regarding the filing of an accusation. The *Miley* court was simply not willing to accept the procedures employed in the administrative proceedings in *Miley* as equivalent to those which had occurred in *Werner* pursuant to the State Bar Act. Since the declaration of the deputy attorney general failed to show that an "independent" investigation had occurred, Harper was not entitled to summary judgment. It is also important to note that neither party to the appeal in *Miley* quarreled with the reasoning in *Werner* .

Subsequent to *Miley,* our Supreme Court reaffirmed *Werner* in its decision in *Chronicle Pub. Co.* v. *Superior Court* (1960) 54 Cal.2d 548 [7 Cal.Rptr. 109, 354 P.2d 637]. The court stated: "The State Bar 'has been provided by legislative enactment as an arm of this court for the purpose of assisting in matters of admission and discipline . . .' [Citations.] The State Bar Act 'sets up an institution controlled and managed by the members of the profession *who are public officers* acting under oath without compensation and *functioning as an arm or branch of this court* in the matter of admissions, reinstatements and discipline of attorneys at law.' (*Herron* v. *State Bar* (1931) 212 Cal. 196, 199 [298 P. 474]; emphasis added.) . . . '. . . the preliminary investigation is an inquiry by *officers of this court* . . .' (Emphasis added.) In *Werner* v. *Hearst Publications, Inc.* [citation], the court said concerning the local administrative committee of the State Bar: 'It is presumed that the members of the committee, *being public officers,* regularly performed their duty . . .' (Emphasis added.)" (*Id.,* at p. 566.)

In *Chronicle,* our Supreme Court described the procedures as a service to protect both the public and members of the bar. "The procedure evolved by the State Bar is well adapted to provide reasonable protection for both the public and the members of the bar. The State Bar will accept a complaint from any member of the public who feels, whether rightly or wrongly, that he has been aggrieved by the action of the attorney, or feels interested in complaining about an attorney, no matter how informally made the complaint may be. . . . These complaints are confidential unless they result in disciplinary action taken against the attorney. Many such complaints found to be unfounded are never brought to the attention of the attorney involved. *This procedure acts as a safety valve for the public. It thereby is made to feel that the law profession is not a closed body which protects its members no matter how unfaithful to their trusts any might be, and which would punish a member of the public who makes an unfounded charge by disclosure of his name and his charge.* Although the vast majority of the charges made against attorneys are by disgruntled clients and completely without foundation [fn. omitted], and are so found by the State Bar, such complainants are somewhat satisfied by the fact that they have had their day before the tribunal." (*Chronicle, supra,* 54 Cal.2d at pp. 567-568.) (Italics added.) "The procedure and its confidential character is a great protection to the lawyer. He is not exposed to publicity where groundless charges are made. In some of the cases, the charges are so meritless that the attorney is not contacted for his explanation. The fact that a charge has been made against an attorney, no matter how guiltless the attorney might be, if generally known, would do the attorney irreparable harm even though he be cleared by the State Bar." (*Id.,* at p. 569.)

 Stanwyck argues in his reply brief that the State Bar has changed dramatically since the *Chronicle* decision was decided in 1960 because the members of the Board of Governors and the State Bar panels and review committee consist in significant part of nonlawyer public members. Appellant argues that the infusion of nonlawyer members into the State Bar has somehow vitiated the urgency and reasoning for the public to feel that the legal profession is a closed body. We reject this notion. Even though the present 22 members of the Board of Governors now include 6 lay members and the present State Bar Hearing Department may utilize nonlawyer referees, we fail to see how this limited infusion of nonlawyers on the Board of Governors and in the State Bar panels would dictate a change in public policy.

Stanwyck argues that the modern trend in other jurisdictions is that complaints to attorney disciplinary boards are not subject to an absolute privilege.[9] Respondent Horne, on the other hand, suggests that a "growing num-

---

[9]Among appellant's citations are *Friedland* v. *Podhoretz* (1980) 174 N.J.Super. 73 [415 A.2d 381] and *Petition of Supreme Court Special Com., etc.* (Fla. 1979) 373 So.2d 1.

ber" of states have adopted the rule of absolute privilege. Counsel's citation to other authorities is indeed informative to us, but we are not persuaded that California should change its public policy of allowing an absolute privilege in connection with this aspect of attorney disciplinary proceedings[10] provided it is shown or presumed that the State Bar has conducted its investigation pursuant to its Rules.

In reaffirming *Werner,* we do not wish to see members of the bar being subject to unfounded complaints by disgruntled former clients or other persons. However, we believe that our opinion is consonant with the continued integrity of the bar. We realize that some members of the bar may be occasionally subject to fraudulent and false complaints; however, these may be best handled by referral of such matters to the appropriate prosecuting agencies with a recommendation that perjury charges be filed. However, if a person who is considering the filing of a complaint with the State Bar against an attorney knows that he or she may be subject to a subsequent malicious prosecution action by the accused attorney, it is reasonable to infer that such knowledge would have an effect on the desire to lodge a complaint in the first instance, regardless of how legitimate the complaint may be. This result clearly would not be in the public interest or in the interest of the bar.

Although an attorney may be occasionally deprived of his right to recover damages in a civil action for the malicious filing of such a complaint without probable cause and based upon false and fraudulent accusations, we are not persuaded that a change in *Werner* is dictated.[11] Even persons who would complain to the State Bar in the utmost good faith will face the possibility of defending an action in malicious prosecution if the accused attorney simply alleges in his complaint that the charges were made without probable cause or based upon false or unfounded allegations. If the complainant were required to defend a malicious prosecution action, the damage or injury to public confidence would be done. We are thus not persuaded that any change in the policies set forth in *Werner* or *Chronicle* is warranted.

---

[10]Annotations contained in (1957) 52 A.L.R.2d 1208, (1971) 39 A.L.R.3d 473, and (1981) 9 A.L.R.4th 807, 817-824, also provide an analysis of the trend in the law concerning malicious prosecution predicated upon prosecution, institution or instigation of disciplinary proceedings against attorneys and other professionals in various jurisdictions.

[11]According to amicus, the State Bar, the year Stanwyck was the subject of disciplinary proceedings, the State Bar received 5,397 complaints against its members. Of these 5,397 complaints, 937 complaints survived an initial examination and evaluation by a staff member of the bar and were the subject of a preliminary investigation. Only 206 of the 937 complaints, 1 of which involved Stanwyck, resulted in formal proceedings.

Finally, Stanwyck argues that it would violate an attorney's right to equal protection of law if attorneys are singled out and denied their right to sue for malicious prosecution based upon administrative disciplinary proceedings against them, citing *Shelley* v. *Kraemer* (1948) 334 U.S. 1, 14-18 [92 L.Ed. 1161, 1181-1183, 68 S.Ct. 836, 3 A.L.R.2d 441]. Stanwyck's argument is simply inapposite.[12] The very premise of our decision is that the investigation conducted by the State Bar pursuant to its Rules was in fact independent of the complainant since there was no allegation in appellant's complaint to the contrary. We, of course, are unable to determine whether administrative proceedings conducted by other professional and vocational agencies or boards would constitute "independent" investigations in every instance. If the investigations conducted by other state agencies and boards are in fact independent, the reasoning of this opinion would seemingly apply. If the investigations are not independent, then a privilege would not lie because the complainant would by necessity have been the one to initiate, procure and continue the administrative action. There is no issue which concerns equal protection because the determination is based upon whether any given state agency or board's investigation would be truly independent and not on the basis of the type of profession or vocation in which the licensee is engaged.

For the foregoing reasons, the order of dismissal entered below is affirmed.

Klein, P. J., and Danielson, J., concurred.

A petition for a rehearing was denied September 20, 1983, and appellant's petition for a hearing by the Supreme Court was denied November 16, 1983. Kaus, J., was of the opinion that the petition should be granted.

---

[12]We specifically decline to decide whether the proceedings applicable to other licensees such as medical practitioners, accountants, and real estate brokers are "independent" investigations and thus governed by the rationale of this decision.

The administrative proceedings involving the discipline of most California licensees are governed by the Administrative Procedures Act (Gov. Code, § 11500 et seq.). However, the State Bar's disciplinary proceedings are *sui generis* in that the Bar investigates and also adjudicates the complaints lodged against its own members.

Stanwyck's equal protection argument is in part premised on his interpretation of California appellate decisions which he urges hold that a malicious prosecution action may be instituted following a favorable determination of an administrative proceeding. We have noted Stanwyck's citations, made an independent search for such decisions on our own, and are not persuaded that there has been any California decision which specifically holds that an action for malicious prosecution of an administrative proceeding will lie following a determination in favor of a licensed medical practitioner.