2004 ND 47

**Michael T. VANDALL, M.D.,**
**Plaintiff and Appellant**

v.

**TRINITY HOSPITALS, a corporation,**
**and Margaret C. Nordell, M.D.,**
**Defendants and Appellees.**

No. 20030255.

Supreme Court of North Dakota.

Feb. 27, 2004.

Craig R. Campbell, Gunhus, Grinnell, Klinger, Swenson & Guy, Ltd., Moorhead, MN, for plaintiff and appellant.

James B. Lynch (argued), Dorsey & Whitney, Minneapolis, MN, David J. Hogue (on brief), Pringle & Herigstad, P.C., Minot, N.D., for defendant and appellee Trinity Hospitals.

Tracy L. Vigness Kolb (argued) and Lance D. Schreiner (appeared), Zuger Kirmis & Smith, Bismarck, N.D., for defendant and appellee Margaret C. Nordell, M.D.

VANDE WALLE, Chief Justice.

[¶ 1] Michael T. Vandall, M.D., appealed from a judgment dismissing his action against Trinity Hospitals ("Trinity") and Margaret C. Nordell, M.D. for failure to state a claim upon which relief could be granted, and awarding Trinity $24,740.63 in attorneys' fees. We hold Vandall's complaint fails to state a claim upon which relief can be granted, and the trial court abused its discretion in awarding Trinity attorneys' fees. We affirm the judgment dismissing Vandall's complaint but we reverse the award of attorneys' fees.

I

[¶ 2] Trinity hired Vandall under a Physician Services Agreement effective from December 1, 1996, through November 30, 2001. Vandall alleged that, during the course of his employment with Trinity, he learned Nordell, another Trinity physician, was engaged in a level of treatment that Vandall believed violated accepted standards of care. According to Vandall, he unsuccessfully attempted to address the problem through Trinity's available internal procedures. Vandall alleged that, after consulting with legal counsel, he ultimately reported the matter to the North Dakota Board of Medical Examiners ("Board"), and the Board concluded Nordell's treatment constituted gross negligence and immediately suspended her license to practice medicine in North Dakota. Vandall claimed Trinity then began a series of retaliatory actions against him, including censuring him and failing to reappoint him

to various hospital committees. Vandall alleged Nordell initiated the censure action against him with a letter to Trinity's Quality Assurance Committee, and she filed meritless complaints, which were terminated in his favor, with the Board and with the American College of Obstetricians and Gynecologists ("ACOG"). On October 9, 2001, Trinity informed Vandall that his employment at Trinity would end when his Physician Services Agreement expired on November 30, 2001.

[¶ 3] In January 2003, Vandall sued Trinity and Nordell, alleging Trinity undertook a series of retaliatory actions against him, because, as required by N.D.C.C. § 43–17.1–05.1, he reported deficiencies in Nordell's medical practice. Vandall alleged Nordell, without a reasonable basis, initiated and continued a series of meritless administrative actions to impair his right and ability to practice medicine. Vandall also alleged the actions by Trinity and Nordell constituted intentional infliction of emotional distress.

[¶ 4] The trial court dismissed Vandall's complaint against Trinity and Nordell under N.D.R.Civ.P. 12(b)(vi), concluding Vandall failed to state a claim upon which relief could be granted against both defendants. The court concluded Vandall's claim for retaliation against Trinity was barred by the 180–day statute of limitations in N.D.C.C. § 34–01–20, which preempted his common law cause of action for retaliation. The court concluded Vandall failed to state a claim against Nordell because she did not initiate, continue, or procure a civil administrative proceeding against him within the meaning of Restatement (Second) of Torts § 680 (1977). The court also concluded Vandall's claims against Trinity and Nordell failed to meet the threshold requirement of extreme and outrageous conduct necessary for a claim for intentional infliction of emotional dis-

tress under Restatement (Second) of Torts § 46 (1965). The court also awarded Trinity $24,740.63 in attorneys' fees under N.D.C.C. § 34–01–20(3).

## II

[¶ 5] A motion to dismiss a complaint under N.D.R.Civ.P. 12(b)(vi) tests the legal sufficiency of the claim presented in the complaint. *Ziegelmann v. DaimlerChrysler Corp.*, 2002 ND 134, ¶ 5, 649 N.W.2d 556. On appeal from a dismissal under N.D.R.Civ.P. 12(b)(vi), we construe the complaint in the light most favorable to the plaintiff and accept as true the well-pleaded allegations in the complaint. *Ziegelmann*, at ¶ 5. Under N.D.R.Civ.P. 12(b)(vi), a complaint should not be dismissed unless "it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted." *Ziegelmann*, at ¶ 5 (quoting *Lang v. Schafer*, 2000 ND 2, ¶ 7, 603 N.W.2d 904). We will affirm a judgment dismissing a complaint for failure to state a claim if we cannot "discern a potential for proof to support it." *Ziegelmann*, at ¶ 5 (quoting *Towne v. Dinius*, 1997 ND 125, ¶ 7, 565 N.W.2d 762).

## III

[¶ 6] Vandall argues his complaint states a common law claim for retaliation against Trinity. He argues his common law claim is subject to a six-year statute of limitations and has not been preempted by the 180–day statute of limitations in N.D.C.C. § 34–01–20.

[¶ 7] Section 34–01–20(1), N.D.C.C., prohibits an employer from discharging or penalizing an employee for reporting the violation or suspected violation of a law, ordinance, regulation, or rule to an employer, a governmental body, or a law enforcement official. Under N.D.C.C. § 34–01–20(3), an employee may bring a

civil action for injunctive relief or .actual damages, or both, within 180 days after the alleged violation, completion of proceedings with the department of labor, or completion of any internal grievance procedure, whichever is later. Vandall commenced his action against Trinity in January 2003, which is more than 180 days after his Physician Services Agreement expired on November 30, 2001.

[¶ 8] Vandall nevertheless argues N.D.C.C. § 34–01–20 does not preempt his common law claim for retaliatory discharge. He argues the clear legislative intent of N.D.C.C. § 34–01–20 was to expand, not to restrict, the existing common law remedies for tortious retaliatory conduct. He argues this Court has recognized the coexistence of common law and statutory claims for retaliatory discharge after the enactment of N.D.C.C. § 34–01–20.

[¶ 9] In 1993, the North Dakota Legislature enacted the whistle-blower statute now codified at N.D.C.C. § 34–01–20. See 1993 N.D. Sess. Laws ch. 346. The 1993 enactment prohibited an employer from discharging or penalizing an employee for reporting a violation of law to the employer, a governmental body, or a law enforcement official. Id. Under the 1993 enactment, an employer who willfully violated that statute was guilty of an infraction and the employee could seek assistance from the labor commissioner to assure compliance with the law, but the 1993 enactment did not specifically authorize a civil action. Id. See Dahlberg v. Lutheran Soc. Servs., 2001 ND 73, ¶ 33, 625 N.W.2d 241. In 1997, the Legislature amended N.D.C.C. § 34–01–20 to authorize an employee claiming retaliation to bring a civil action for injunctive relief or damages and to allow the labor department to receive complaints about violations of the statute. 1997 N.D. Sess. Laws ch. 291. See Dahl-

berg, at ¶ 33. The 1997 enactment required the employee to bring a civil action within ninety days after the alleged violation, completion of proceedings before the labor department, or completion of an internal grievance procedure, whichever was later. 1997 N.D. Sess. Laws ch. 291. In 2001, the Legislature amended the ninety-day time period to 180 days. 2001 N.D. Sess. Laws ch. 307, § 1.

[¶ 10] Before the 1997 enactment of legislation authorizing a civil action for retaliatory discharge, this Court had discussed a limited public policy exception to the employment at-will doctrine for cases where a termination violated a specific declaration of public policy evidenced by a constitutional or a statutory provision. Lee v. Walstad, 368 N.W.2d 542, 546–47 (N.D. 1985) (citing Brockmeyer v. Dun & Bradstreet, 113 Wis.2d 561, 335 N.W.2d 834, 840 (1983)). Without deciding the propriety of a public policy exception to the at-will doctrine, we held the employee in that case had not defined a clear public policy which his termination violated. Lee, at 547.

[¶ 11] Since Lee, we have recognized employees may bring a tort action for retaliatory discharge against an employer, if the employer's actions contravene a clear statement of public policy in a constitutional or a statutory provision. In Krein v. Marian Manor Nursing Home, 415 N.W.2d 793, 794–95 (N.D.1987), we held an at-will employee could sue an employer in tort for wrongful discharge in retaliation for seeking statutorily authorized workers compensation benefits. In Ressler v. Humane Soc., 480 N.W.2d 429, 431–32 (N.D. 1992), we held an at-will employee could sue an employer for wrongful discharge in retaliation for honoring a subpoena and for testifying truthfully at a trial. In Jose v. Norwest Bank, 1999 ND 175, ¶ 21, 599 N.W.2d 293, we cited N.D.C.C. § 34–01–20, but we concluded an at-will employee

could not sue an employer for wrongful discharge for participating in an internal employee investigation where the employee defined no clear public policy which the discharge violated. In *Schultze v. Continental Ins. Co.*, 2000 ND 209, ¶¶ 9–10, 619 N.W.2d 510, we considered an at-will employee's wrongful discharge claim in the context of an insurance company's duty to defend the employer, and we concluded the insurance company had a duty to defend because the employee's complaint alleged acts that began before the prior acts date for coverage under an insurance policy. In *Dahlberg*, 2001 ND 73, ¶¶ 32–38, 625 N.W.2d 241, we said we had recognized a limited public policy exception to the at-will doctrine if the employee established a termination in retaliation for complying with a clear public policy, and we then construed N.D.C.C. § 34–01–20 to require reports of violations or suspected violations of law to be made for the purpose of "blowing the whistle" to expose an illegality. In *Anderson v. Meyer Broadcasting Co.*, 2001 ND 125, ¶ 29, 630 N.W.2d 46, we said under either the public policy exception to the at-will doctrine or the statutory provisions in N.D.C.C. § 34–01–20, a prima facie case for retaliatory discharge required an employee to show: (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) the existence of a causal connection between the employee's protected activity and the employer's adverse action.

[¶ 12] Vandall claims our decision in *Anderson* recognizes the coexistence of both a common law and a statutory action for retaliatory discharge. We reject Vandall's broad reading of *Anderson*. As the United States Supreme Court recently explained in *Illinois v. Lidster*, —— U.S. ——, ——, 124 S.Ct. 885, 889, 157 L.Ed.2d 843, —— (2004), general language in judicial opinions must be read in the context of the issues before a court and not in reference to circumstances different from what the court was then considering.

[¶ 13] In *Anderson*, 2001 ND 125, ¶¶ 27–37, 630 N.W.2d 46, we considered a summary judgment dismissal of a retaliatory discharge claim, and we held the employee had failed to establish a genuine issue of material fact on a causal connection between the employee's protected activity and her termination a year later. In that context, we said the elements of a claim for retaliatory discharge under both the public policy exception and the statutory claim included the existence of a causal connection between the employee's protected action and the employer's adverse action. However, no issue was raised in *Anderson*, or any other cases cited by Vandall, about the coexistence of a common law and statutory claim for retaliation after the authorization of a civil action for retaliatory discharge in N.D.C.C. § 34–01–20. This is the first case in which an issue has been raised about the coexistence of common law and statutory claims for retaliatory discharge.

[¶ 14] Section 1–01–06 N.D.C.C. says "[i]n this state there is no common law in any case where the law is declared by the code," and that language has consistently been construed to mean that statutory enactments take precedence over and govern conflicting common law doctrines. *See Northern Pac. R.R. Co. v. Herbert*, 116 U.S. 642, 654, 6 S.Ct. 590, 29 L.Ed. 755 (1886); *In the Interest of M.C.H.*, 2001 ND 205, ¶ 9, 637 N.W.2d 678; *Hill v. Weber*, 1999 ND 74, ¶ 9, 592 N.W.2d 585; *Martin v. Rath*, 1999 ND 31, ¶ 20, 589 N.W.2d 896; *Cermak v. Cermak*, 1997 ND 187, ¶ 9, 569 N.W.2d 280; *Olson v. Souris River Telecomms. Coop, Inc.*, 1997 ND 10, ¶ 13, 558 N.W.2d 333; *Burr v. Trinity Med. Ctr.*, 492 N.W.2d 904, 907–10 (N.D.1992); *Nuelle v. Wells*, 154 N.W.2d 364, 365–66

(N.D.1967); *Fitzmaurice v. Fitzmaurice,* 62 N.D. 191, 196–200, 242 N.W. 526, 527–29 (1932); *Reeves & Co. v. Russell,* 28 N.D. 265, 275–83, 148 N.W. 654, 657–61 (1914) (on petition for rehearing).

[¶ 15] In *Hill,* 1999 ND 74, ¶ 9, 592 N.W.2d 585, we said "[w]here the provisions of the statute differ from previous case law, the statute prevails." In *Rath,* 1999 ND 31, ¶ 20, 589 N.W.2d 896, we said "[s]tatutory principles govern over general common law if there is a conflict." In *Burr,* 492 N.W.2d at 907–10, we recognized a hierarchy which favored statutory law over common law, and we declined to apply a common law doctrine of equitable tolling to toll a malpractice statute of limitations. In *Nuelle,* 154 N.W.2d at 365–66, we concluded statutory provisions in N.D.C.C. § 9–10–06 for negligence actions prevailed over the common law doctrine that unemancipated minors could not maintain tort actions against their parents. In *Fitzmaurice,* 62 N.D. at 196–200, 242 N.W. at 527–29, we held the common law rule that a wife may not sue her husband in tort was abrogated by statute. In *Herbert,* 116 U.S. at 654, 6 S.Ct. 590, the United States Supreme Court discussed the predecessor of N.D.C.C. § 1–01–06, and said the code governs where it declares the law, but the common law prevails where the code is silent, and if language in the code is not defined by the code, that language can be explained by case law. The common thread in the cases applying the language of N.D.C.C. § 1–01–06 is "[t]here cannot be two rules of law on the same subject contradicting each other." *Herbert,* at 654, 6 S.Ct. 590. *See also Rath,* at ¶ 20 ("[s]tatutory principles govern over general common law if there is a conflict.").

[¶ 16] The elements of the statutory and the common law actions for retaliatory discharge are essentially the same. *See*

*Anderson,* 2001 ND 125, ¶ 29, 630 N.W.2d 46; *Dahlberg,* 2001 ND 73, ¶ 34, 625 N.W.2d 241. However, the statutes of limitation are different. Because the language of N.D.C.C. § 1–01–06 precludes two contradictory rules of law on the same subject, we conclude the plain language of the 180–day statute of limitations in N.D.C.C. § 34–01–20(3) governs Vandall's claim for retaliatory discharge against Trinity. We therefore hold Vandall's action against Trinity is barred by the statute of limitations, and his complaint against Trinity for retaliatory discharge fails to state a claim upon which relief can be granted.

[¶ 17] Because of our resolution of this issue, we do not consider issues about whether Vandall became an at-will employee after two years of employment with Trinity under N.D.C.C. § 34–01–02, or whether Trinity's conduct in allowing his employment contract to expire constituted acts of retaliation.

IV

[¶ 18] Vandall argues his complaint states a cause of action against Nordell for the common law tort of wrongful initiation and continuation of administrative proceedings under Restatement (Second) of Torts § 680 (1977). Vandall's complaint alleged Nordell initiated a censure action against him with a letter to Trinity's Quality Assurance Committee and Nordell filed complaints against him with the Board and with the ACOG. Vandall's complaint alleged Nordell's complaints, with the exception of Trinity's censure, were all terminated in his favor.

[¶ 19] We have not previously considered whether to adopt the Restatement (Second) of Torts § 680 in North Dakota, nor do we need to do so here. Assuming without deciding such an action exists in North Dakota, we conclude Vandall's com-

plaint fails to state a claim against Nordell under that provision, which relates to proceedings before an administrative board and provides:

> One who takes an active part in the initiation, continuation or procurement of civil proceedings against another before an administrative board that has power to take action adversely affecting the legally protected interests of the other, is subject to liability for any special harm caused thereby, if
>
> (a) he acts without probable cause to believe that the charge or claim on which the proceedings are based may be well founded, and primarily for a purpose other than that of securing appropriate action by the board, and
>
> (b) except where they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

[¶ 20]  Vandall alleged Nordell initiated Trinity's censure action with a letter to Trinity's Quality Assurance Committee, but Vandall's complaint alleged he was censured by Trinity.  Vandall's complaint does not and cannot allege Nordell's letter to Trinity's Quality Assurance Committee resulted in the termination of that proceeding in his favor because Trinity did censure him.  Therefore his allegations regarding that letter fail to state a claim upon which relief can be granted under Restatement (Second) of Torts § 680.  Moreover, Vandall has not marshaled an argument in this Court about his allegation that Nordell filed two complaints with the ACOG. We have said a party waives an issue by not providing supporting argument.  *McMorrow v. State,* 2003 ND 134, ¶ 12, 667 N.W.2d 577 (citing *Olander Contracting, Co. v. Gail Wachter Invs.,* 2002 ND 65, ¶ 27, 643 N.W.2d 29).  We conclude Vandall has waived any argument about Nordell's complaints with the ACOG.

[¶ 21]  We move to consideration of Vandall's argument about Nordell's two complaints to the Board, which he alleges were terminated in his favor and were made for revenge and without justification and probable cause.

[¶ 22]  Courts that have considered the application of Restatement (Second) of Torts § 680 generally have recognized it does not apply to a complaint made to an administrative agency that has an independent investigative panel charged with investigating and determining whether the complaint warrants further action, because the agency, not the complainant, issues legal process and initiates, continues, or procures the administrative proceeding. *See Hogen v. Valley Hosp.,* 147 Cal.App.3d 119, 195 Cal.Rptr. 5, 7–8 (1983); *Stanwyck v. Horne,* 146 Cal.App.3d 450, 194 Cal. Rptr. 228, 233–34 (1983); *Lindenman v. Umscheid,* 255 Kan. 610, 875 P.2d 964, 979 (1994); *Davis v. Board of Educ.,* 963 S.W.2d 679, 685–87 (Mo.Ct.App.1998).

[¶ 23]  In *Davis,* 963 S.W.2d at 686, the Missouri Court of Appeals explained the principle of initiating, continuing, or procuring an administrative proceeding:

> What constitutes initiation, institution or instigation of charges in an agency setting depends on how charges are brought to the agency for adjudication. In those cases where the agency provides a means for persons to file complaints which automatically trigger agency action on those complaints, the person is held to have instigated the action.
>
> Thus, where the defendants on their own initiative submitted affidavits to licensing officials with the intent to secure the revocation or non-renewal of plaintiff's private detective's license and the licensing authorities refused to renew

the license on the basis of the affidavits, the court held that instigation was sufficient. *Melvin[ v. Pence]*, 130 F.2d [423] at 427 [(1942)].

Where a defendant filed written verified charges of misconduct with a Real Estate Licensing Board which required the Board to hold a hearing, the defendant "instituted" the administrative action. *Carver[ v. Lykes]*, [262 N.C. 345,-]137 S.E.2d [139] at 145–46 [(1964)]. The defendant's motive is not relevant. *Id.* at 146. Likewise, where a document is filed with an agency which document initiates a contested proceeding, a defendant has instigated an action. *Hillside Associates[ v. Stravato]*, 642 A.2d [664] at 670 [(1994)] (filing an appeal of plaintiff's building permit with a zoning board). In *Kauffman[ v. A.H. Robins, Co.]*, 448 S.W.2d [400] at 403–04 [(1969)], the Tennessee Supreme Court held that the defendant drug company had instituted an agency Board of Pharmacy proceeding where it filed a complaint in which it stated that it stood ready to attempt to prove that plaintiff violated certain pharmacy laws. As a result of the complaint, plaintiff was cited to appear before the State Board of Pharmacy for a hearing. *Id.* at 401.

On the other hand, when an agency official has sole authority to initiate the action, persons who have provided information to that official are not held to have initiated or taken an "active part" in initiating the action. The general rule is that an individual who merely provides facts concerning the conduct of another to an officer possessing the authority to issue charges is not liable for malicious prosecution. *See e.g., Lindenman*, 875 P.2d at 979. In *Lindenman* the Kansas Supreme Court held that a county board of health employee who inspected a day care center and filed a report with the board did not initiate the board's ex parte suspension of the day care center's license and cannot be considered an "active part" of the board's subsequent revocation action against the day care center. *Id.* The board filed the revocation action when the day care center refused to stipulate to the accuracy of the inspection report, a condition for lifting the suspension. *Id.* at 969. Likewise, in *Werner v. Hearst Publications, Inc.*, 65 Cal.App.2d 667, 151 P.2d 308, 312 (1944), individuals who sent a letter to an investigator for a state bar association complaining about an attorney did not institute the show cause proceeding against the attorney, where the local bar association committee made an independent investigation and one of its members signed the complaint initiating the proceeding. This holding was reaffirmed in *Stanwyck v. Horne*, 146 Cal. App.3d 450, 194 Cal.Rptr. 228, 234 (1983).

[¶ 24] In *Stanwyck*, 194 Cal.Rptr. at 233–34, the California Court of Appeals discussed the initiation of proceedings in the context of a complaint to the state bar association about a lawyer's conduct. The court concluded the state bar association's rules required it to conduct an independent investigation and determine whether to proceed on the complaint, and the state bar association, not the complainant, therefore initiated, continued, or procured disciplinary proceedings against the attorney. *Id.* at 234. The court recognized a strong public policy dictated allowing a person to make a complaint to the state bar association without fear of a subsequent action for malicious prosecution. *Id.* at 234–36. In *Hogen*, 195 Cal.Rptr. at 8, the California Court of Appeals extended the rationale of *Stanwyck* to complaints to the Board of Medical Quality Assurance, noting the mechanism for handling those complaints

was similar to the procedure employed by the state bar association.

[¶ 25] Under N.D.C.C. § 43–17.1–05.1, a physician with actual knowledge that a licensed physician may have committed any of the grounds for disciplinary action shall promptly report that information to the Board's investigative panel, and the investigative panel shall investigate any evidence the licensee may have committed any grounds for discipline. Under parallel provisions in N.D.C.C. § 43–17.1–05(1), any person may make a complaint to the Board's investigative panel, and the investigative panel shall conduct the investigation "it deems necessary" to determine whether any physician has committed any grounds for discipline provided by law. The investigative panel shall make findings, including whether the physician's conduct warrants further proceedings. N.D.C.C. § 43–17.1–05(1). Under N.D.C.C. § 43–17.1–05(2), if the investigative panel decides a formal hearing should be held, it shall serve a formal complaint upon the physician and with the Board for disposition by the Board under N.D.C.C. ch. 28–32, and the complaint is then prosecuted before the Board. If the investigative panel finds insufficient facts to warrant further investigation or action, the complaint must be dismissed and the matter is closed. N.D.C.C. § 43–17.1–05(3). Under N.D.C.C. §§ 43–17.1–05(1) and 43–17.1–05.1, a person who, in good faith, makes a report to an investigative panel is not subject to civil liability for making the report.

[¶ 26] Although Vandall claims the corollary of the "good faith" language in those provisions is that the Legislature presumed the lack of good faith would establish the basis for an action, he has not marshaled an argument to support that claim. *See Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc.*, 2001 ND 116,

¶ 2, 628 N.W.2d 707 (holding no implied private right of action for damages under Unfair Discrimination Law or Unfair Trade Practices Law). The good faith exception to civil liability recognizes the public policy of encouraging persons to come forward with complaints about medical professionals without fear of defending a malicious prosecution action. The good faith exception does not necessarily establish an independent action for bad faith, and that language is not germane to whether Nordell initiated, continued, or procured an administrative proceeding within the meaning of Restatement (Second) of Torts § 680.

[¶ 27] Under the statutory scheme in N.D.C.C. §§ 43–17.1–05 and 43–17.1–05.1, the investigative panel, not a physician or person making a report or complaint to the investigative panel, is the entity that initiates, continues, or procures proceedings before the Board within the meaning of Restatement (Second) of Torts § 680. *See Hogen*, 195 Cal.Rptr. at 7–8. We therefore conclude Vandall has failed to state a claim against Nordell for wrongful use of civil proceedings before an administrative board under Restatement (Second) of Torts § 680.

## V

[¶ 28] Vandall argues his complaint states a cause of action against Trinity and Nordell for intentional infliction of emotional distress.

[¶ 29] In *Muchow v. Lindblad*, 435 N.W.2d 918, 923–25 (N.D.1989), we said a claim for intentional infliction of emotional distress under Restatement (Second) of Torts § 46 (1965) consists of extreme and outrageous conduct that is intentional or reckless and causes severe emotional distress. In discussing the degree of extreme and outrageous conduct necessary for intentional infliction of emo-

tional distress, we said a recitation of the defendant's conduct must lead an average member of the community to exclaim, "outrageous!" *Muchow*, at 924 (quoting Restatement (Second) of Torts § 46 comment d). In *Dahlberg*, 2001 ND 73, ¶ 19, 625 N.W.2d 241, we said the threshold element of extreme and outrageous conduct is narrowly limited to outrageous conduct that exceeds all possible bounds of decency. In determining whether conduct is extreme and outrageous, courts consider whether the conduct is so extreme in degree as to be beyond all possible bounds of decency and utterly intolerable in a civilized society. *Id.* (quoting *Muchow*, at 924). Whether the alleged actions meet the threshold of extreme and outrageous conduct is a question of law to be decided by the court. *Dahlberg*, at ¶ 21. In *Dahlberg*, at ¶ 25, in discussing a claim in the context of the termination of employment, we said "[t]he nature of any termination is such that it often produces stress and mental anguish in the person being terminated [and] the test is not whether or not the termination was traumatic, but whether or not the termination was outrageous."

[¶ 30] We conclude Vandall's claims against Trinity do not allege conduct that is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. To the extent Vandall raises a similar claim against Nordell, we also conclude those claims do not rise to the level of extreme and outrageous conduct. We therefore conclude Vandall's complaint fails to state a claim for intentional infliction of emotional distress against Nordell and Trinity.

## VI

■ [¶ 31] Vandall argues the trial court erred in awarding Trinity attorneys' fees. He argues he did not sue Trinity under N.D.C.C. § 34-01-20, and attorneys' fees should not be awarded under that statute.

■ [¶ 32] Attorney fees are not allowed to a successful litigant unless expressly authorized by statute. *In re Estate of Lutz*, 2000 ND 226, ¶ 33, 620 N.W.2d 589. Section 34-01-20(3), N.D.C.C. provides that "[i]n any action under this section, the court may award reasonable attorneys' fees to the prevailing party as part of the costs of litigation."

[¶ 33] In awarding Trinity attorneys' fees, the court recognized its "authority for the awarding an unspecified amount of reasonable attorney fees in N.D.C.C. § 34-01-20(3) was discretionary," and said "Vandall's legal action was obviously barred by the statute of limitations" in N.D.C.C. § 34-01-20. Vandall cannot escape the statute of limitations by pleading a common law action. *See Sime v. Tvenge Assocs. Architects & Planners, P.C.*, 488 N.W.2d 606, 609 (N.D.1992) (stating party cannot escape malpractice statute of limitations by simply couching complaint in terms of ordinary negligence). Although the statute of limitations in N.D.C.C. § 34-01-20 precludes Vandall's claim for retaliatory discharge, his complaint and arguments were premised upon a common law claim for retaliatory discharge, not a statutory claim. Vandall did not purport to sue Trinity under N.D.C.C. § 34-01-20, and the primary issue in the trial court and on appeal to this Court was whether Vandall could bring an action under the common law. Furthermore, this is the first case in which we have specifically considered an issue regarding the interrelationship of a provision in that statute and a common law claim for retaliation. We agree with Vandall that he should not suffer the detriment of an adverse award of attorney fees where he has not couched his complaint in

terms of nor relied upon the statute. Under these circumstances, we conclude the trial court was without authority to award Trinity attorneys' fees under the statute.

## VII

[¶ 34]   We affirm the judgment dismissing Vandall's complaint and reverse the award of attorneys' fees.

[¶ 35] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and WILLIAM F. HODNY, S.J., concur.

[¶ 36] The Honorable WILLIAM F. HODNY, Surrogate Judge, sitting in place of KAPSNER, J., disqualified.